KOLENDER, CHIEF OF POLICE OF SAN DIEGO,
ET AL. *v.* LAWSON

No. 81–1320.   Argued November 8, 1982—Decided May 2, 1983

O'CONNOR, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined.   BRENNAN, J., filed a concurring opinion, *post,* p. 362. WHITE, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post,* p. 369.

*A. Wells Petersen,* Deputy Attorney General of California, argued the cause for appellants.   With him on the briefs were *George Deukmejian,* Attorney General, *Robert H. Philibosian,* Chief Assistant Attorney General, *Daniel J.*

*Kremer*, Assistant Attorney General, and *Jay M. Bloom*, Deputy Attorney General.

*Mark D. Rosenbaum*, by invitation of the Court, 459 U. S. 964, argued the cause as *amicus curiae* in support of the judgment below. With him on the brief were *Dennis M. Perluss, Fred Okrand, Mary Ellen Gale, Robert H. Lynn,* and *Charles S. Sims.**

JUSTICE O'CONNOR delivered the opinion of the Court.

This appeal presents a facial challenge to a criminal statute that requires persons who loiter or wander on the streets to provide a "credible and reliable" identification and to account for their presence when requested by a peace officer under circumstances that would justify a stop under the standards of *Terry* v. *Ohio*, 392 U. S. 1 (1968).[1] We conclude that the statute as it has been construed is unconstitutionally vague within the meaning of the Due Process Clause of the Fourteenth Amendment by failing to clarify what is contemplated

---

*Briefs of *amici curiae* urging reversal were filed by *William L. Cahalan, Edward Reilly Wilson,* and *Timothy A. Baughman* for the Wayne County Prosecutor's Office; and by *Wayne W. Schmidt, James P. Manak,* and *Fred E. Inbau* for Americans for Effective Law Enforcement, Inc., et al.

Briefs of *amici curiae* urging affirmance were filed by *Eugene G. Iredale* for the California Attorneys for Criminal Justice; and by *Michael Ratner* for the Center for Constitutional Rights.

Briefs of *amici curiae* were filed by *John K. Van de Kamp, Harry B. Sondheim,* and *John W. Messer* for the Appellate Committee of the California District Attorneys Association; by *Dan Stormer, John Huerta,* and *Peter Schey* for the National Lawyers Guild et al.; and by *Quin Denvir* and *William Blum* for the State Public Defender of California.

[1] California Penal Code Ann. § 647(e) (West 1970) provides:

"Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification."

by the requirement that a suspect provide a "credible and reliable" identification. Accordingly, we affirm the judgment of the court below.

I

Appellee Edward Lawson was detained or arrested on approximately 15 occasions between March 1975 and January 1977 pursuant to Cal. Penal Code Ann. § 647(e) (West 1970).[2] Lawson was prosecuted only twice, and was convicted once. The second charge was dismissed.

Lawson then brought a civil action in the District Court for the Southern District of California seeking a declaratory judgment that § 647(e) is unconstitutional, a mandatory injunction to restrain enforcement of the statute, and compensatory and punitive damages against the various officers who detained him. The District Court found that § 647(e) was overbroad because "a person who is stopped on less than probable cause cannot be punished for failing to identify himself." App. to Juris. Statement A–78. The District Court enjoined enforcement of the statute, but held that Lawson could not recover damages because the officers involved acted in the good-faith belief that each detention or arrest was lawful.

Appellant H. A. Porazzo, Deputy Chief Commander of the California Highway Patrol, appealed the District Court decision to the Court of Appeals for the Ninth Circuit. Lawson

---

[2] The District Court failed to find facts concerning the particular occasions on which Lawson was detained or arrested under § 647(e). However, the trial transcript contains numerous descriptions of the stops given both by Lawson and by the police officers who detained him. For example, one police officer testified that he stopped Lawson while walking on an otherwise vacant street because it was late at night, the area was isolated, and the area was located close to a high crime area. Tr. 266–267. Another officer testified that he detained Lawson, who was walking at a late hour in a business area where some businesses were still open, and asked for identification because burglaries had been committed by unknown persons in the general area. *Id.*, at 207. The appellee states that he has never been stopped by police for any reason apart from his detentions under § 647(e).

cross-appealed, arguing that he was entitled to a jury trial on the issue of damages against the officers.   The Court of Appeals affirmed the District Court determination as to the unconstitutionality of § 647(e).   658 F. 2d 1362 (1981).   The appellate court determined that the statute was unconstitutional in that it violates the Fourth Amendment's proscription against unreasonable searches and seizures, it contains a vague enforcement standard that is susceptible to arbitrary enforcement, and it fails to give fair and adequate notice of the type of conduct prohibited.   Finally, the Court of Appeals reversed the District Court as to its holding that Lawson was not entitled to a jury trial to determine the good faith of the officers in his damages action against them, and remanded the case to the District Court for trial.

The officers appealed to this Court from that portion of the judgment of the Court of Appeals which declared § 647(e) unconstitutional and which enjoined its enforcement.   We noted probable jurisdiction pursuant to 28 U. S. C. § 1254(2). 455 U. S. 999 (1982).

## II

In the courts below, Lawson mounted an attack on the facial validity of § 647(e).[3]   "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered."   *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U. S. 489, 494, n. 5 (1982).   As construed by the California Court of Appeal,[4] § 647(e) requires that an in-

---

[3] The appellants have apparently never challenged the propriety of declaratory and injunctive relief in this case.   See *Steffel* v. *Thompson*, 415 U. S. 452 (1974).   Nor have appellants ever challenged Lawson's standing to seek such relief.   We note that Lawson has been stopped on approximately 15 occasions pursuant to § 647(e), and that these 15 stops occurred in a period of less than two years.   Thus, there is a "credible threat" that Lawson might be detained again under § 647(e).   See *Ellis* v. *Dyson*, 421 U. S. 426, 434 (1975).

[4] In *Wainwright* v. *Stone*, 414 U. S. 21, 22–23 (1973), we held that "[f]or the purpose of determining whether a state statute is too vague and indefi-

dividual provide "credible and reliable" identification when requested by a police officer who has reasonable suspicion of criminal activity sufficient to justify a *Terry* detention.[5] *People* v. *Solomon*, 33 Cal. App. 3d 429, 108 Cal. Rptr. 867

nite to constitute valid legislation 'we must take the statute as though it read precisely as the highest court of the State has interpreted it.' *Minnesota ex rel. Pearson* v. *Probate Court*, 309 U. S. 270, 273 (1940)." The Court of Appeals for the Ninth Circuit noted in its decision that the state intermediate appellate court has construed the statute in *People* v. *Solomon*, 33 Cal. App. 3d 429, 108 Cal. Rptr. 867 (1973), that the State Supreme Court has refused review, and that *Solomon* has been the law of California for nine years. In these circumstances, we agree with the Ninth Circuit that the *Solomon* opinion is authoritative for purposes of defining the meaning of § 647(e). See 658 F. 2d 1362, 1364–1365, n. 3 (1981).

[5] The *Solomon* court apparently read *Terry* v. *Ohio*, 392 U. S. 1 (1968), to hold that the test for a *Terry* detention was whether the officer had information that would lead a reasonable man to believe that the intrusion was appropriate. The Ninth Circuit noted that according to *Terry*, the applicable test under the Fourth Amendment requires that the police officer making a detention "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U. S., at 21. The Ninth Circuit then held that although what *Solomon* articulated as the *Terry* standard differed from what *Terry* actually held, "[w]e believe that the *Solomon* court meant to incorporate in principle the standards enunciated in *Terry*." 658 F. 2d, at 1366, n. 8. We agree with that interpretation of *Solomon*. Of course, if the *Solomon* court misread *Terry* and interpreted § 647(e) to permit investigative detentions in situations where the officers lack a reasonable suspicion of criminal activity based on objective facts, Fourth Amendment concerns would be implicated. See *Brown* v. *Texas*, 443 U. S. 47 (1979).

In addition, the *Solomon* court appeared to believe that both the *Terry* detention *and* frisk were proper under the standard for *Terry* detentions, and since the frisk was more intrusive than the request for identification, the request for identification *must* be proper under *Terry*. See 33 Cal. App. 3d, at 435, 108 Cal. Rptr., at 870–871. The Ninth Circuit observed that the *Solomon* analysis was "slightly askew." 658 F. 2d, at 1366, n. 9. The court reasoned that under *Terry*, the frisk, as opposed to the detention, is proper only if the detaining officer reasonably believes that the suspect may be armed and dangerous, in addition to having an articulable suspicion that criminal activity is afoot.

(1973). "Credible and reliable" identification is defined by the State Court of Appeal as identification "carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself." *Id.*, at 438, 108 Cal. Rptr., at 873. In addition, a suspect may be required to *"account for his presence . . .* to the extent that it assists in producing credible and reliable identification . . . ." *Id.*, at 438, 108 Cal. Rptr., at 872. Under the terms of the statute, failure of the individual to provide "credible and reliable" identification permits the arrest.[6]

### III

Our Constitution is designed to maximize individual freedoms within a framework of ordered liberty. Statutory limitations on those freedoms are examined for substantive authority and content as well as for definiteness or certainty of expression. See generally M. Bassiouni, Substantive Criminal Law 53 (1978).

As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc., supra; Smith* v. *Goguen,* 415 U. S. 566 (1974); *Grayned* v. *City of Rockford,* 408 U. S. 104 (1972); *Papachristou* v. *City of Jacksonville,* 405 U. S. 156 (1972); *Connally* v. *General Construction Co.,* 269 U. S. 385 (1926). Although the doctrine focuses

---

[6] In *People* v. *Caylor,* 6 Cal. App. 3d 51, 56, 85 Cal. Rptr. 497, 501 (1970), the court suggested that the State must prove that a suspect detained under § 647(e) was loitering or wandering for "evil purposes." However, in *Solomon,* which the court below and the parties concede is "authoritative" in the absence of a California Supreme Court decision on the issue, there is no discussion of any requirement that the State prove "evil purposes."

both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith,* 415 U. S., at 574. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.,* at 575.[7]

Section 647(e), as presently drafted and as construed by the state courts, contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a "credible and reliable" identification. As such, the statute vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest. An individual, whom police may think is suspicious but do not have probable cause to believe has committed a crime, is entitled to continue to walk the public streets "only at the whim of any police officer" who happens to stop that individual under § 647(e). *Shuttlesworth* v. *City of Birmingham,* 382 U. S. 87, 90 (1965). Our concern here is based upon the "potential for arbitrarily suppressing First Amendment liberties . . . ." *Id.,* at 91. In addition, § 647(e) implicates consideration of the constitutional right to freedom of movement. See *Kent* v. *Dulles,* 357 U. S. 116, 126 (1958); *Aptheker* v. *Secretary of State,* 378 U. S. 500, 505–506 (1964).[8]

---

[7] Our concern for minimal guidelines finds its roots as far back as our decision in *United States* v. *Reese,* 92 U. S. 214, 221 (1876):

"It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of government."

[8] In his dissent, JUSTICE WHITE claims that "[t]he upshot of our cases . . . is that whether or not a statute purports to regulate constitutionally

Section 647(e) is not simply a "stop-and-identify" statute. Rather, the statute requires that the individual provide a "credible and reliable" identification that carries a "reasonable assurance" of its authenticity, and that provides "means for later getting in touch with the person who has identified himself." *Solomon*, 33 Cal. App. 3d, at 438, 108 Cal. Rptr., at 872–873. In addition, the suspect may also have to account for his presence "to the extent it assists in producing

protected conduct, it should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications." *Post*, at 370. The description of our holdings is inaccurate in several respects. First, it neglects the fact that we permit a facial challenge if a law reaches "a substantial amount of constitutionally protected conduct." *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U. S. 489, 494 (1982). Second, where a statute imposes criminal penalties, the standard of certainty is higher. See *Winters* v. *New York*, 333 U. S. 507, 515 (1948). This concern has, at times, led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application. See, *e. g.*, *Colautti* v. *Franklin*, 439 U. S. 379, 394–401 (1979); *Lanzetta* v. *New Jersey*, 306 U. S. 451 (1939). The dissent concedes that "the overbreadth doctrine permits facial challenge of a law that reaches a substantial amount of conduct protected by the First Amendment . . . ." *Post*, at 371. However, in the dissent's view, one may not "confuse vagueness and overbreadth by attacking the enactment as being vague as applied to conduct other than his own." *Post*, at 370. But we have traditionally viewed vagueness and overbreadth as logically related and similar doctrines. See, *e. g.*, *Keyishian* v. *Board of Regents*, 385 U. S. 589, 609 (1967); *NAACP* v. *Button*, 371 U. S. 415, 433 (1963). See also Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67, 110–113 (1960).

No authority cited by the dissent supports its argument about facial challenges in the arbitrary enforcement context. The dissent relies heavily on *Parker* v. *Levy*, 417 U. S. 733 (1974), but in that case we deliberately applied a less stringent vagueness analysis "[b]ecause of the factors differentiating military society from civilian society." *Id.*, at 756. *Hoffman Estates, supra*, also relied upon by the dissent, does not support its position. In addition to reaffirming the validity of facial challenges in situations where free speech or free association are affected, see 455 U. S., at 494, 495, 498–499, the Court emphasized that the ordinance in *Hoffman Estates* "simply regulates business behavior" and that "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow." *Id.*, at 499, 498.

credible and reliable identification." *Id.*, at 438, 108 Cal. Rptr., at 872.

At oral argument, the appellants confirmed that a suspect violates § 647(e) unless "the officer [is] satisfied that the identification is reliable." Tr. of Oral Arg. 6. In giving examples of how suspects would satisfy the requirement, appellants explained that a jogger, who was not carrying identification, could, depending on the particular officer, be required to answer a series of questions concerning the route that he followed to arrive at the place where the officers detained him,[9] or could satisfy the identification requirement simply by reciting his name and address. See *id.*, at 6–10.

It is clear that the full discretion accorded to the police to determine whether the suspect has provided a "credible and reliable" identification necessarily "entrust[s] lawmaking 'to the moment-to-moment judgment of the policeman on his beat.'" *Smith, supra*, at 575 (quoting *Gregory v. Chicago*, 394 U. S. 111, 120 (1969) (Black, J., concurring)). Section 647(e) "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure,'" *Papachristou*, 405 U. S., at 170 (quoting *Thornhill v. Alabama*, 310 U. S. 88, 97–98 (1940)), and "confers on police a virtually unrestrained power to arrest and charge persons with a violation." *Lewis v. City of New Orleans*, 415 U. S. 130, 135 (1974) (POWELL, J., concurring in result). In providing that a detention under § 647(e) may occur only where there is the level of suspicion sufficient to justify a *Terry* stop, the State ensures the existence of "neutral limitations on the conduct of individual officers." *Brown v. Texas*, 443

---

[9] To the extent that § 647(e) criminalizes a suspect's failure to answer such questions put to him by police officers, Fifth Amendment concerns are implicated. It is a "settled principle that while the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer." *Davis v. Mississippi*, 394 U. S. 721, 727, n. 6 (1969).

U. S., at 51. Although the initial detention is justified, the State fails to establish standards by which the officers may determine whether the suspect has complied with the subsequent identification requirement.

Appellants stress the need for strengthened law enforcement tools to combat the epidemic of crime that plagues our Nation. The concern of our citizens with curbing criminal activity is certainly a matter requiring the attention of all branches of government. As weighty as this concern is, however, it cannot justify legislation that would otherwise fail to meet constitutional standards for definiteness and clarity. See *Lanzetta* v. *New Jersey*, 306 U. S. 451 (1939). Section 647(e), as presently construed, requires that "suspicious" persons satisfy some undefined identification requirement, or face criminal punishment. Although due process does not require "impossible standards" of clarity, see *United States* v. *Petrillo*, 332 U. S. 1, 7–8 (1947), this is not a case where further precision in the statutory language is either impossible or impractical.

## IV

We conclude § 647(e) is unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute.[10] Accordingly, the judgment of

---

[10] Because we affirm the judgment of the court below on this ground, we find it unnecessary to decide the other questions raised by the parties because our resolution of these other issues would decide constitutional questions in advance of the necessity of doing so. See *Burton* v. *United States*, 196 U. S. 283, 295 (1905); *Liverpool, N. Y. & P. S.S. Co.* v. *Commissioners of Emigration*, 113 U. S. 33, 39 (1885). See also *Ashwander* v. *TVA*, 297 U. S. 288, 346–347 (1936) (Brandeis, J., concurring). The remaining issues raised by the parties include whether § 647(e) implicates Fourth Amendment concerns, whether the individual has a legitimate expectation of privacy in his identity when he is detained lawfully under *Terry*, whether the requirement that an individual identify himself during a *Terry* stop violates the Fifth Amendment protection against compelled testimony, and whether inclusion of the *Terry* standard as part of a criminal

the Court of Appeals is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, concurring.

I join the Court's opinion; it demonstrates convincingly that the California statute at issue in this case, Cal. Penal Code Ann. § 647(e) (West 1970), as interpreted by California courts, is unconstitutionally vague. Even if the defect identified by the Court were cured, however, I would hold that this statute violates the Fourth Amendment.[1] Merely to facilitate the general law enforcement objectives of investigating and preventing unspecified crimes, States may not authorize the arrest and criminal prosecution of an individual for failing to produce identification or further information on demand by a police officer.

---

statute creates other vagueness problems. The appellee also argues that § 647(e) permits arrests on less than probable cause. See *Michigan* v. *DeFillippo,* 443 U. S. 31, 36 (1979).

[1] We have not in recent years found a state statute invalid directly under the Fourth Amendment, but we have long recognized that the government may not "authorize police conduct which trenches upon Fourth Amendment rights, regardless of the labels which it attaches to such conduct." *Sibron* v. *New York,* 392 U. S. 40, 61 (1968). In *Sibron,* and in numerous other cases, the Fourth Amendment issue arose in the context of a motion by the defendant in a criminal prosecution to suppress evidence against him obtained as the result of a police search or seizure of his person or property. The question thus has always been whether particular conduct by the police violated the Fourth Amendment, and we have not had to reach the question whether state law purporting to authorize such conduct also offended the Constitution. In this case, however, appellee Edward Lawson has been repeatedly arrested under authority of the California statute, and he has shown that he will likely be subjected to further seizures by the police in the future if the statute remains in force. See *Los Angeles* v. *Lyons, ante,* at 105–109; *Gomez* v. *Layton,* 129 U. S. App. D. C. 289, 394 F. 2d 764 (1968). It goes without saying that the Fourth Amendment safeguards the rights of those who are not prosecuted for crimes as well as the rights of those who are.

It has long been settled that the Fourth Amendment prohibits the seizure and detention or search of an individual's person unless there is probable cause to believe that he has committed a crime, except under certain conditions strictly defined by the legitimate requirements of law enforcement and by the limited extent of the resulting intrusion on individual liberty and privacy. See *Davis* v. *Mississippi*, 394 U. S. 721, 726–727 (1969). The scope of that exception to the probable-cause requirement for seizures of the person has been defined by a series of cases, beginning with *Terry* v. *Ohio*, 392 U. S. 1 (1968), holding that a police officer with reasonable suspicion of criminal activity, based on articulable facts, may detain a suspect briefly for purposes of limited questioning and, in so doing, may conduct a brief "frisk" of the suspect to protect himself from concealed weapons. See, *e. g.*, *United States* v. *Brignoni-Ponce*, 422 U. S. 873, 880–884 (1975); *Adams* v. *Williams*, 407 U. S. 143, 145–146 (1972). Where probable cause is lacking, we have expressly declined to allow significantly more intrusive detentions or searches on the *Terry* rationale, despite the assertion of compelling law enforcement interests. "For all but those narrowly defined intrusions, the requisite 'balancing' has been performed in centuries of precedent and is embodied in the principle that seizures are 'reasonable' only if supported by probable cause." *Dunaway* v. *New York*, 442 U. S. 200, 214 (1979).[2]

---

[2] A brief detention is usually sufficient as a practical matter to accomplish all legitimate law enforcement objectives with respect to individuals whom the police do not have probable cause to arrest. For longer detentions, even though they fall short of a full arrest, we have demanded not only a high standard of law enforcement necessity, but also objective indications that an individual would not consider the detention significantly intrusive. Compare *Dunaway* v. *New York*, 442 U. S., at 212–216 (seizure of suspect without probable cause and custodial interrogation in police station violates Fourth Amendment), and *Davis* v. *Mississippi*, 394 U. S. 721, 727–728 (1969) (suspect may not be summarily detained and taken to police station for fingerprinting but may be ordered to appear at a specific time),

*Terry* and the cases following it give full recognition to law enforcement officers' need for an "intermediate" response, short of arrest, to suspicious circumstances; the power to effect a brief detention for the purpose of questioning is a powerful tool for the investigation and prevention of crimes. Any person may, of course, direct a question to another person in passing. The *Terry* doctrine permits police officers to do far more: If they have the requisite reasonable suspicion, they may use a number of devices with substantial coercive impact on the person to whom they direct their attention, including an official "show of authority," the use of physical force to restrain him, and a search of the person for weapons. *Terry* v. *Ohio, supra,* at 19, n. 16; see *Florida* v. *Royer,* 460 U. S. 491, 498–499 (1983) (opinion of WHITE, J.); *United States* v. *Mendenhall,* 446 U. S. 544, 554 (1980) (opinion of Stewart, J.). During such an encounter, few people will ever feel free not to cooperate fully with the police by answering their questions. Cf. 3 W. LaFave, Search and Seizure § 9.2, pp. 53–55 (1978). Our case reports are replete with examples of suspects' cooperation during *Terry* encounters, even when the suspects have a great deal to lose by cooperating. See, *e. g., Sibron* v. *New York,* 392 U. S. 40, 45 (1968); *Florida* v. *Royer, supra,* at 493–495.

The price of that effectiveness, however, is intrusion on individual interests protected by the Fourth Amendment. We have held that the intrusiveness of even these brief stops for purposes of questioning is sufficient to render them "seizures" under the Fourth Amendment. See *Terry* v. *Ohio,* 392 U. S., at 16. For precisely that reason, the scope of seizures of the person on less than probable cause that *Terry*

---

with *Michigan* v. *Summers,* 452 U. S. 692, 701–705 (1981) (suspect may be detained in his own home without probable cause for time necessary to search the premises pursuant to a valid warrant supported by probable cause). See also *Florida* v. *Royer,* 460 U. S. 491, 500 (1983) (opinion of WHITE, J.) ("least intrusive means" requirement for searches not supported by probable cause).

permits is strictly circumscribed to limit the degree of intrusion they cause. *Terry* encounters must be brief; the suspect must not be moved or asked to move more than a short distance; physical searches are permitted only to the extent necessary to protect the police officers involved during the encounter; and, most importantly, the suspect must be free to leave after a short time and to decline to answer the questions put to him.

> "[T]he person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." *Id.*, at 34 (WHITE, J., concurring).

Failure to observe these limitations converts a *Terry* encounter into the sort of detention that can be justified only by probable cause to believe that a crime has been committed. See *Florida* v. *Royer*, 460 U. S., at 501 (opinion of WHITE, J.); *id.*, at 509–511 (BRENNAN, J., concurring in result); *Dunaway* v. *New York*, *supra*, at 216.

The power to arrest—or otherwise to prolong a seizure until a suspect had responded to the satisfaction of the police officers—would undoubtedly elicit cooperation from a high percentage of even those very few individuals not sufficiently coerced by a show of authority, brief physical detention, and a frisk. We have never claimed that expansion of the power of police officers to act on reasonable suspicion alone, or even less, would further no law enforcement interests. See, *e. g.*, *Brown* v. *Texas*, 443 U. S. 47, 52 (1979). But the balance struck by the Fourth Amendment between the public interest in effective law enforcement and the equally public interest in safeguarding individual freedom and privacy from arbitrary governmental interference forbids such expansion. See *Dunaway* v. *New York*, *supra; United States* v. *Brignoni-Ponce*, 422 U. S., at 878. Detention beyond the limits

of *Terry* without probable cause would improve the effectiveness of legitimate police investigations by only a small margin, but it would expose individual members of the public to exponential increases in both the intrusiveness of the encounter and the risk that police officers would abuse their discretion for improper ends.    Furthermore, regular expansion of *Terry* encounters into more intrusive detentions, without a clear connection to any specific underlying crimes, is likely to exacerbate ongoing tensions, where they exist, between the police and the public.    See Report of the National Advisory Commission on Civil Disorders 157–168 (1968).

In sum, under the Fourth Amendment, police officers with reasonable suspicion that an individual has committed or is about to commit a crime may detain that individual, using some force if necessary, for the purpose of asking investigative questions.[3]   They may ask their questions in a way calculated to obtain an answer.    But they may not *compel* an answer, and they must allow the person to leave after a reasonably brief period of time unless the information they have acquired during the encounter has given them probable cause sufficient to justify an arrest.[4]

California cannot abridge this constitutional rule by making it a crime to refuse to answer police questions during a

---

[3] Police officers may have a similar power with respect to persons whom they reasonably believe to be material witnesses to a specific crime.   See, *e. g.*, ALI Model Code of Pre-Arraignment Procedure § 110.2(1)(b) (Proposed Official Draft 1975).

[4] Of course, some reactions by individuals to a properly limited *Terry* encounter, *e. g.*, violence toward a police officer, in and of themselves furnish valid grounds for arrest.   Other reactions, such as flight, may often provide the necessary information, in addition to that which the officers already possess, to constitute probable cause.   In some circumstances it is even conceivable that the mere fact that a suspect refuses to answer questions once detained, viewed in the context of the facts that gave rise to reasonable suspicion in the first place, would be enough to provide probable cause.   A court confronted with such a claim, however, would have to evaluate it carefully to make certain that the person arrested was not being penalized for the exercise of his right to refuse to answer.

*Terry* encounter, any more than it could abridge the protections of the Fifth and Sixth Amendments by making it a crime to refuse to answer police questions once a suspect has been taken into custody. To begin, the statute at issue in this case could not be constitutional unless the intrusions on Fourth Amendment rights it occasions were necessary to advance some specific, legitimate state interest not already taken into account by the constitutional analysis described above. Yet appellants do not claim that § 647(e) advances · any interest other than general facilitation of police investigation and preservation of public order—factors addressed at length in *Terry*, *Davis*, and *Dunaway*. Nor do appellants show that the power to arrest and to impose a criminal sanction, in addition to the power to detain and to pose questions under the aegis of state authority, is so necessary in pursuit of the State's legitimate interests as to justify the substantial additional intrusion on individuals' rights. Compare Brief for Appellants 18–19 (asserting that § 647(e) is justified by state interest in "detecting and preventing crime" and "protecting the citizenry from criminal acts"), and *People* v. *Solomon*, 33 Cal. App. 3d 429, 436–437, 108 Cal. Rptr. 867, 872 (1973) (§ 647(e) justified by "the public need involved," *i. e.*, "protection of society against crime"), with *United States* v. *Brignoni-Ponce, supra*, at 884 (federal interest in immigration control permits stops at the border itself without reasonable suspicion), and *California* v. *Byers*, 402 U. S. 424, 456–458 (1971) (Harlan, J., concurring in judgment) (state interest in regulating automobiles justifies making it a crime to refuse to stop after an automobile accident and report it). Thus, because the State's interests extend only so far as to justify the limited searches and seizures defined by *Terry*, the balance of interests described in that case and its progeny must control.

Second, it goes without saying that arrest and the threat of a criminal sanction have a substantial impact on interests protected by the Fourth Amendment, far more severe than

we have ever permitted on less than probable cause. Furthermore, the likelihood that innocent persons accosted by law enforcement officers under authority of § 647(e) will have no realistic means to protect their rights compounds the severity of the intrusions on individual liberty that this statute will occasion. The arrests it authorizes make a mockery of the right enforced in *Brown* v. *Texas*, 443 U. S. 47 (1979), in which we held squarely that a State may not make it a crime to refuse to provide identification on demand in the absence of reasonable suspicion.[5] If § 647(e) remains in force, the validity of such arrests will be open to challenge only after the fact, in individual prosecutions for failure to produce identification. Such case-by-case scrutiny cannot vindicate the Fourth Amendment rights of persons like appellee, many of whom will not even be prosecuted after they are arrested, see *ante*, at 354. A pedestrian approached by police officers has no way of knowing whether the officers have "reasonable suspicion"—without which they may not demand identification even under § 647(e), *ante*, at 356, and n. 5—because that condition depends solely on the objective facts known to the officers and evaluated in light of their experience, see *Terry* v. *Ohio*, 392 U. S., at 30; *United States* v. *Brignoni-Ponce*, 422 U. S., at 884–885. The pedestrian will know that to assert his rights may subject him to arrest and all that goes with it: new acquaintances among jailers, lawyers, prisoners, and bail bondsmen, firsthand knowledge of local jail conditions, a "search incident to arrest," and the expense of defending against a possible prosecution.[6] The only response to be

---

[5] In *Brown* we had no need to consider whether the State can make it a crime to refuse to provide identification on demand during a seizure permitted by *Terry*, when the police have reasonable suspicion but not probable cause. See 443 U. S., at 53, n. 3.

[6] Even after arrest, however, he may not be forced to answer questions against his will, and—in contrast to what appears to be normal procedure during *Terry* encounters—he will be so informed. See *Miranda* v. *Arizona*, 384 U. S. 436 (1966). In fact, if he indicates a desire to remain silent, the police should cease questioning him altogether. *Id.*, at 473–474.

expected is compliance with the officers' requests, whether or not they are based on reasonable suspicion, and without regard to the possibility of later vindication in court. Mere reasonable suspicion does not justify subjecting the innocent to such a dilemma.[7]

By defining as a crime the failure to respond to requests for personal information during a *Terry* encounter, and by permitting arrests upon commission of that crime, California attempts in this statute to compel what may not be compelled under the Constitution. Even if § 647(e) were not unconstitutionally vague, the Fourth Amendment would prohibit its enforcement.

JUSTICE WHITE, with whom JUSTICE REHNQUIST joins, dissenting.

The usual rule is that the alleged vagueness of a criminal statute must be judged in light of the conduct that is charged to be violative of the statute. See, *e. g., United States* v. *Mazurie,* 419 U. S. 544, 550 (1975); *United States* v. *Powell,* 423 U. S. 87, 92–93 (1975). If the actor is given sufficient notice that his conduct is within the proscription of the statute, his conviction is not vulnerable on vagueness grounds, even if as applied to other conduct, the law would be unconstitutionally vague. None of our cases "suggests that one who has received fair warning of the criminality of his own conduct from the statute in question is nonetheless entitled to

---

[7] When law enforcement officers have probable cause to believe that a person has committed a crime, the balance of interests between the State and the individual shifts significantly, so that the individual may be forced to tolerate restrictions on liberty and invasions of privacy that possibly will never be redressed, even if charges are dismissed or the individual is acquitted. Such individuals may be arrested, and they may not resist. But probable cause, and nothing less, represents the point at which the interests of law enforcement justify subjecting an individual to any significant intrusion beyond that sanctioned in *Terry,* including either arrest or the need to answer questions that the individual does not want to answer in order to avoid arrest or end a detention.

attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker* v. *Levy*, 417 U. S. 733, 756 (1974). The correlative rule is that a criminal statute is not unconstitutionally vague on its face unless it is "impermissibly vague in all of its applications." *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U. S. 489, 497 (1982).

These general rules are equally applicable to cases where First Amendment or other "fundamental" interests are involved. The Court has held that in such circumstances "more precision in drafting may be required because of the vagueness doctrine in the case of regulation of expression," *Parker* v. *Levy, supra,* at 756; a "greater degree of specificity" is demanded than in other contexts. *Smith* v. *Goguen*, 415 U. S. 566, 573 (1974). But the difference in such cases "relates to how strict a test of vagueness shall be applied in judging a particular criminal statute." *Parker* v. *Levy*, 417 U. S., at 756. It does not permit the challenger of the statute to confuse vagueness and overbreadth by attacking the enactment as being vague as applied to conduct other than his own. See *ibid.* Of course, if his own actions are themselves protected by the First Amendment or other constitutional provision, or if the statute does not fairly warn that it is proscribed, he may not be convicted. But it would be unavailing for him to claim that although he knew his own conduct was unprotected and was plainly enough forbidden by the statute, others may be in doubt as to whether their acts are banned by the law.

The upshot of our cases, therefore, is that whether or not a statute purports to regulate constitutionally protected conduct, it should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications. If any fool would know that a particular category of conduct would be within the reach of the statute, if there is an unmistakable core that a reasonable person would know is forbidden by the

law, the enactment is not unconstitutional on its face and should not be vulnerable to a facial attack in a declaratory judgment action such as is involved in this case. Under our cases, this would be true, even though as applied to other conduct the provision would fail to give the constitutionally required notice of illegality.

Of course, the overbreadth doctrine permits facial challenge of a law that reaches a substantial amount of conduct protected by the First Amendment; and, as I have indicated, I also agree that in First Amendment cases the vagueness analysis may be more demanding. But to imply, as the majority does, *ante*, at 358–359, n. 8, that the overbreadth doctrine requires facial invalidation of a statute which is not vague as applied to a defendant's conduct but which is vague as applied to other acts is to confound vagueness and overbreadth, contrary to *Parker* v. *Levy, supra.*

If there is a range of conduct that is clearly within the reach of the statute, law enforcement personnel, as well as putative arrestees, are clearly on notice that arrests for such conduct are authorized by the law. There would be nothing arbitrary or discretionary about such arrests. If the officer arrests for an act that both he and the lawbreaker know is clearly barred by the statute, it seems to me an untenable exercise of judicial review to invalidate a state conviction because in some other circumstance the officer may arbitrarily misapply the statute. That the law might not give sufficient guidance to arresting officers with respect to other conduct should be dealt with in those situations. See, *e. g., Hoffman Estates, supra,* at 504. It is no basis for fashioning a further brand of "overbreadth" and invalidating the statute on its face, thus forbidding its application to identifiable conduct that is within the State's power to sanction.

I would agree with the majority in this case if it made at least some sense to conclude that the requirement to provide "credible and reliable identification" after a valid stop on reasonable suspicion of criminal conduct is "impermissibly vague in all of its applications." *Hoffman Estates* v. *Flipside,*

*supra*, at 495.*  But the statute is not vulnerable on this ground; and the majority, it seems to me, fails to demonstrate that it is.  Suppose, for example, an officer requests identification information from a suspect during a valid *Terry* stop and the suspect answers: "Who I am is just none of your business."  Surely the suspect would know from the statute that a refusal to provide any information at all would constitute a violation.  It would be absurd to suggest that in such a situation only the unfettered discretion of a police officer, who has legally stopped a person on reasonable suspicion, would serve to determine whether a violation of the statute has occurred.

> "It is self-evident that there is a whole range of conduct that anyone with at least a semblance of common sense would know is [a failure to provide credible and reliable identification] and that would be covered by the statute . . . .  In these instances, there would be ample notice to the actor and no room for undue discretion by enforcement officers.  There may be a variety of other conduct that might or might not be claimed [to have failed to meet the statute's requirements] by the State, but unpredictability in those situations does not change the certainty in others."  *Smith* v. *Goguen*, 415 U. S., at 584 (WHITE, J., concurring in judgment).

See *id.*, at 590 (BLACKMUN, J., joined by BURGER, C. J., agreeing with WHITE, J., on the vagueness issue).  Thus, even if, as the majority cryptically asserts, the statute here

---

*The majority attempts to underplay the conflict between its decision today and the decision last Term in *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, by suggesting that we applied a "less strict vagueness test" because economic regulations were at issue.  The Court there also found that the ordinances challenged might be characterized as quasi-criminal or criminal in nature and held that because at least some of respondent's conduct clearly was covered by the ordinance, the facial challenge was unavailing even under the "relatively strict test" applicable to criminal laws.  455 U. S., at 499–500.

implicates First Amendment interests, it is not vague on its face, however more strictly the vagueness doctrine should be applied. The judgment below should therefore not be affirmed but reversed and appellee Lawson remitted to challenging the statute as it has been or will be applied to him.

The majority finds that the statute "contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification." *Ante*, at 358. At the same time, the majority concedes that "credible and reliable" has been defined by the state court to mean identification that carries reasonable assurance that the identification is authentic and that provides means for later getting in touch with the person. The narrowing construction given this statute by the state court cannot be likened to the "standardless" statutes involved in the cases cited by the majority. For example, *Papachristou v. City of Jacksonville*, 405 U. S. 156 (1972), involved a statute that made it a crime to be a "vagrant." The statute provided:

> "'Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, . . . common drunkards, common night walkers, . . . lewd, wanton and lascivious persons, . . . common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, . . . shall be deemed vagrants.'" *Id.*, at 156–157, n. 1.

In *Lewis v. City of New Orleans*, 415 U. S. 130, 132 (1974), the statute at issue made it a crime "'for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.'" The present statute, as construed by the state courts, does not fall in the same category.

The statutes in *Lewis v. City of New Orleans* and *Smith v. Goguen, supra,* as well as other cases cited by the majority clearly involved threatened infringements of First Amend-

ment freedoms.   A stricter test of vagueness was therefore warranted.   Here, the majority makes a vague reference to potential suppression of First Amendment liberties, but the precise nature of the liberties threatened is never mentioned.   *Shuttlesworth* v. *City of Birmingham,* 382 U. S. 87 (1965), is cited, but that case dealt with an ordinance making it a crime to " 'stand or loiter upon any street or sidewalk . . . after having been requested by any police officer to move on,' " *id.,* at 90, and the First Amendment concerns implicated by the statute were adequately explained by the Court's reference to *Lovell* v. *City of Griffin,* 303 U. S. 444 (1938), and *Schneider* v. *State,* 308 U. S. 147 (1939), which dealt with the First Amendment right to distribute leaflets on city streets and sidewalks.   There are no such concerns in the present case.

Of course, if the statute on its face violates the Fourth or Fifth Amendment—and I express no views about that question—the Court would be justified in striking it down.   But the majority apparently cannot bring itself to take this course.   It resorts instead to the vagueness doctrine to invalidate a statute that is clear in many of its applications but which is somehow distasteful to the majority.   As here construed and applied, the doctrine serves as an open-ended authority to oversee the States' legislative choices in the criminal law area and in this case leaves the State in a quandary as to how to draft a statute that will pass constitutional muster.

I would reverse the judgment of the Court of Appeals.