681 So.2d 1179 (1996)
L.B., Appellant,
v.
STATE of Florida, Appellee.
No. 95-01693.
District Court of Appeal of Florida, Second District.
October 16, 1996.
James Marion Moorman, Public Defender, Bartow, and Brad Permar, Assistant Public Defender, Clearwater, for Appellee.
Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
*1180 FRANK, Judge.
L.B., a juvenile, challenges her conviction for possessing a weapon on school property in violation of section 790.115(2), Florida Statutes (1995). L.B. contends, and we agree, that that portion of the statute which excepts common pocketknives from the definition of "weapon" is impermissibly vague and, thus, violative of due process. Section 790.001(13), Florida Statutes (1995), provides:
"Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
To cure this infirmity we strike the "common pocketknife" exception from the definition. We reverse L.B.'s conviction and remand for further proceedings.
Authorities at L.B.'s Pinellas County middle school discovered her in possession of a buck knife with a 3¾ inch blade and an approximate overall length of 8½ inches. She carried the knife unopened, in her pocket. There is no allegation that L.B. used, brandished, or otherwise displayed the knife. At a pretrial hearing, the trial court focused upon the determinative issue of whether L.B.'s knife fit within the "common pocketknife" exception found in section 790.001(13).
The trial court concluded that no per se test could be applied to determine whether the knife, as a matter of law, fell within the exception. See State v. Ortiz, 504 So.2d 39 (Fla. 2d DCA 1987). Subsequently, the trial court found that the particular knife carried by L.B. was too large to fit within the exception and entered her conviction, thus concluding that the knife was not a "common pocketknife."
Our assessment of this matter begins with the premise that "all doubts as to the validity of [the] statute [are] in favor of its constitutionality...." State v. Stalder, 630 So.2d 1072, 1076 (Fla.1994) (quoting State v. Elder, 382 So.2d 687, 690 (Fla.1980)); State v. Mitchell, 652 So.2d 473, 476 (Fla. 2d DCA 1995). To survive due process scrutiny under the void-for-vagueness doctrine, however, section 790.001(13), like all penal statutes, must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Furthermore, "a law is void on its face if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." Mitchell, 652 So.2d at 477 (quoting Laurence H. Tribe, American Constitutional Law § 12-31 at 1033-34 (2d ed. 1988) (footnotes omitted)).
Unlike the term "firearm,"[1] the statute does not define the term "common pocketknife."[2] It has been asserted that the statute's imprecision serves the legislature's apparent intent "that the carrying of a common pocket knife by a citizen should not constitute a crime, in view of the general custom of people to carry such knives for convenience and useful purposes unrelated to any criminal intent or activity." State v. Nixon, 295 So.2d 121, 122 (Fla. 3d DCA 1974). We do not attempt to gainsay this legislative intent, but, nonetheless, we are compelled to conclude that the statute impermissibly leaves the question of whether a specific pocketknife is or is not a weapon to the "whim of a jury." Curris v. State, 647 So.2d 227, 229 (Fla. 2d DCA 1994). This case and others before this court have demonstrated that the statute is not reasonably certain and fails to provide guidance to citizens who wish to follow a lawful course of conduct. Moreover, the statute offers no guidance to prosecutors, judges, and jurors. See Giaccio v. Pennsylvania, 382 U.S. 399, 402-04, 86 S.Ct. 518, 520-22, 15 L.Ed.2d 447 (1966). Such confusion trips over the Fourteenth Amendment's guarantee of due process.
*1181 Having determined that the term "common pocketknife" is void for vagueness, we do not condemn the entire definition in section 790.001(13). As is noted in Mitchell, we are obliged to preserve as much of the statute as is permissibly consistent with both the legislative intent and constitutional strictures:
When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purposes expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and (4) an act complete in itself remains after the invalid provisions are stricken.
Mitchell, 652 So.2d at 478 (quoting Cramp v. Board of Public Instruction of Orange County, 137 So.2d 828, 830 (Fla.1962)). The "common pocketknife" exception is easily partible from the definition of weapon and no adverse effect upon the validity or clear meaning of the statute results from its excision.[3] Section 790.001(13), with the offensive words omitted, is as follows:
"Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm.
Our assessment of this matter was unanticipated by L.B. She has urged this court to fashion a common-sense, legal test by which a judge could determine whether a specific knife is a "common pocketknife." L.B.'s suggested approach, however, is an invitation for this court to exceed the proper scope of its review authorityan invitation we emphatically decline. If a pocketknife exception is to have any meaningful definition, such definition must be provided by the legislature. See Sarasota Herald-Tribune Co. v. Sarasota County, 632 So.2d 606, 607 (Fla. 2d DCA 1993). Until that body gives its attention to this matter, the determination of whether a pocketknife is or is not a weapon within the meaning of the statute may be determined by established precedent. See State v. Tremblay, 642 So.2d 64 (Fla. 4th DCA 1994); Robinson v. State, 547 So.2d 321 (Fla. 5th DCA 1989); State v. A.D.H., 429 So.2d 1316 (Fla. 5th DCA 1983).
We vacate L.B.'s conviction and remand for a new trial consistent with this opinion.
RYDER, A.C.J., and FULMER, J., concur.
NOTES
[1] See § 790.001(6), Fla.Stat. (1995).
[2] Although the definition of weapon did not obtain its current statutory form until 1969, Chapter 69-306, § 1, at 1106, Laws of Florida, a statutory "common pocketknife" exception to the prohibition against the concealment or secretion of weapons extends back to at least 1847. See Ch. 6, title first, § 5, Laws of Fla. (1847) (Thompson's Digest).
[3] Our research has found an Oregon case which addressed a similar statutory exception and remedied the constitutional infirmity by striking only the word "ordinary" from the phrase "ordinary pocketknife." State v. Harris, 40 Or.App. 317, 594 P.2d 1318 (1979). Such a remedy, in our opinion, fails to cure the confusion created by the statute's failure meaningfully to define "pocketknife."