ERDMANN, Judge
(dissenting):
The majority holds that paragraph 1.1.2.2.5.5. of Air Education and Training Command, Instr. 36-2002, Recruiting Proee-dures for the Air Force (Apr. 18, 2000) [hereinafter AETCI 36-2002] is not unconstitutionally vague and therefore does not violate Pope’s constitutional right to due process. Because I find that the language in this instruction prohibiting “verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment[ ]” failed to put Pope on notice that the conduct in which he engaged would subject him to criminal sanctions and failed to provide adequate enforcement standards, I respectfully dissent. As I would find the language in the instruction unconstitutionally void for vagueness, I would set aside the findings for Specifications 2, 3, and 4 of Charge I and the sentence.[1]
AETCI 36-2002 provides:
Ll.2.2.5. Recruiting personnel will maintain high standards of conduct and be totally professional in their relationships with applicants. Inappropriate conduct and unprofessional relationships include, but are not limited to, the following:
Ll.2.2.5.5. Engaging in any verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment.[2]
“No person shall be ... deprived of life, liberty, or property, without due process of law.” U.S. Const, amend. V. “It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.” Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).
The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Kolender v. Lawson, *77 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The same facets of a statute usually raise concerns of both fair notice and adequate enforcement standards. Hence the analysis of these two concerns tends to overlap. The Supreme Court, however, while recently recognizing the second concern as more important, continues to treat each as an element to be analyzed separately. See id. at 357-58, 103 S.Ct. 1855.
The degree of specificity which the Constitution demands depends on the nature of the statute. Criminal statutes must be more precise than civil statutes because the consequences of vagueness are more severe____ Finally, the Constitution demands more clarity of laws which threaten to inhibit constitutionally protected conduct, especially conduct protected by the First Amendment.
United States v. Gaudreau, 860 F.2d 357, 359-60 (10th Cir.1988) (footnotes omitted).[3]
This court has recognized that a regulation is void for vagueness if it does not provide sufficient notice for a servicemember to reasonably understand that his conduct is proscribed. United States v. Moore, 58 M.J. 466, 469 (C.A.A.F.2003).[4] Paragraph 1.1.2.2.5.5. of AETCI 36-2002 fails on both the “notice” and “adequate enforcement standards” grounds. The broad language in the instruction does not enable ordinary people to understand what conduct is prohibited. Other administrative and criminal provisions addressing this type of conduct recognize a need for further definition. Further, AETCI 36-2002 fails to provide any standards to guide those charged with enforcement of the instruction which encourages arbitrary or discriminatory enforcement.
In order to be prohibited under the language of paragraph 1.1.2.2.5.5., AETCI 36-2002, it is not enough that the conduct is of a sexual nature, it must also create an intimidating, hostile or offensive environment. While the instruction does limit the scope of the prohibition to a recruiter’s relationship with an applicant, it does not further define “conduct of a sexual nature”. It also fails to define or further explain what constitutes an “intimidating, hostile, or offensive environment”. The “conduct of a sexual nature” and “intimidating, hostile, or offensive environment” language is familiar to those who deal with sexual harassment issues in both the civilian and military context, as it comes from the definition of “sexual harassment” adopted by the Equal Opportunity Employment Commission (EEOC):
Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual’s employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual’s work performance or creating an intimidating, hostile, or offensive working environment.
29 C.F.R. § 1604.11(a) (2005). However, in sharp contrast to AETCI 36-2002, the EEOC regulation is accompanied by extensive policy guidance as to what constitutes “conduct of a sexual nature” and a “hostile” environment. See EEOC Notice No. N-915-050, Policy Guidance on Current Issues of *78 Sexual Harassment (Mar. 19,1990) [hereinafter EEOC Policy Guidance]. The EEOC Policy Guidance notes that “[u]nless the conduct is quite severe, a single incident or isolated incidents of offensive sexual conduct or remarks generally do not create an abusive environment.”[5] Id. at para. C(2)
The EEOC Policy Materials also adopts an objective “reasonable person” standard to evaluate when harassment is sufficiently pervasive or severe to constitute a hostile environment and whether challenged conduct is of a sexual nature. Id. at para. C(l). It is constitutionally troublesome that the EEOC regulation provides more definition than does AETCI 36-2002, yet the EEOC regulation does not subject an individual to criminal sanctions as AETCI 36-2002 does.
It is also instructive to compare the language of AETCI 36-2002 to policies and regulations adopted by the Air Force and other branches of the armed forces that are derived from the EEOC definition.[6] Similar to AETCI 36-2002, these service regulations can provide the basis for criminal sanctions under Article 92, UCMJ, 10 U.S.C. § 892 (2000). Unlike AETCI 36-2002, however, these service regulations provide further explanation and guidance as to what type of conduct is prohibited and what type of conduct is allowed under the regulation.
The military has generally adopted a standard that not only utilizes the “objective reasonable person” standard similar to the EEOC, it also has added the subjective viewpoint of the victim.[7] Dep’t of Defense Dir. 1350.2, Military Equal Opportunity (MEO) Program E2.1.15.3 (Aug. 18, 1995) [hereinafter DoD Directive 1350.2] defines “sexual harassment” using the EEOC language and provides that the conduct must be “so severe or pervasive that a reasonable person would perceive, and the victim does perceive, the work environment as hostile or offensive.” The directive goes on to define the “[workplace” environment as including conduct, “on or off duty, [twenty-four] hours a day.” Id. The Air Force has also adopted this same standard in Dep’t of the Air Force, Instr. 36-2706, Military Equal Opportunity Program (July 29, 2004) and Dep’t of the Air Force, Pamphlet 36-2705, Discrimination and Sexual Harassment (Feb. 28, 1995). The lack of definition and enforcement guidance in AET-CI 36-2002 is inconsistent with general Air Force policy.
The current Navy regulation on sexual harassment, Dep’t of the Navy, Sec’y of the Navy Instr. 5300.26D, Policy on Sexual Harassment (Jan. 3, 2006), contains the same prohibitions as the EEOC regulation quoted above, but goes even further than DoD Directive 1350.2 in providing guidance as to that language. It includes a definition of the “reasonable person standard” as an “objective test used to determine if behavior meets the legal test for sexual harassment,” along with a three-page discussion of the “range of behaviors which constitute sexual harassment” that includes the traffic light illustration described by the majority. Id. at enc. (1) and (2). The Army also has regulation which contains a version of the EEOC definition and provides examples of different categories of sexual harassment including verbal conduct, nonverbal conduct, and physical contact. See Dep’t of the Army, Reg. 600-20, Personnel-General, Army Command Policy Ch. 7 (Feb. 1, 2006). In contrast, AETC has not developed any further definition or explanation of the same terms used in the instruction in question.
The EEOC and the branches of the armed forces have determined that the “conduct of a sexual nature” and “hostile environment” language requires further definition and explanation in order to be understood by those to whom the language is applied. If persons who are subject to the EEOC and other *79 military service policies and regulations on sexual harassment require further definition and explanation to know what conduct is prohibited in those contexts, there is no reason that a “person of ordinary intelligence” who is subject to AETCI 36-2002 would not also need those additional definitions and explanations.
In addition to the lack of definition, there is no guidance in AETCI 36-2002 as to what standard is to be applied by those who enforce the instruction. For example, questions such as should an objective or subjective standard be used and should the incident be viewed through the eyes of the victim or a reasonable person are left unanswered. With no standards to rely upon, those who initiate criminal sanctions for violation of AETCI 36-2002 must necessarily do so in an arbitrary manner. See City of Chicago v. Morales, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (citing Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)).
I agree with the majority that sexual harassment should not be tolerated in the recruiting context—just as it should not be tolerated in any military context. But if AETC intends, as the majority holds, to have a zero tolerance policy for sexual harassment that differs from the sexual harassment policy utilized by the rest of the Air Force, the other services and the EEOC, their instruction should make that clear. I disagree with the majority that in the context of recruiting a lack of definitions and standards for conduct that constitutes a sexual harassment criminal offense is acceptable.[8]
I do not reach a conclusion as to whether Pope’s actions violated the language of the instruction. The question before this court is whether the instruction was adequate to inform him what conduct would be prohibited and whether the instruction provides adequate enforcement standards. Which definitions and standards are utilized is crucial to determining whether Pope’s conduct violated the instruction. Under the commonly accepted definitions and standards of the EEOC and other service regulations, Pope’s conduct may not have violated the instruction. Under the vague standard affirmed by the majority, his conduct did violate the instruction. This conflict illustrates the problems presented where there is a lack of notice and inadequate enforcement standards.
The majority finds that the language of the instruction, along with the directions against misconduct given to Pope during his recruiter training, were sufficient to provide Pope with notice that his behavior would subject him to criminal sanctions. Pope, 63 M.J. at 73.[9] Generally, unless a statute infringes on First Amendment rights, it will be evaluated “in light of the facts of the case at hand.” United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). Pope raises First Amendment concerns in his brief that should limit the analysis to the language of the statute.[10] However, even if the statute were evaluated “in light of the facts of the case at hand”, at best Pope was informed that nonspecific misconduct could result in harsh consequences. The record does not reflect that he was informed at any time during his training as to what constitutes “conduct of a sexual nature”, or what constitutes an “intimidating, hostile, or offensive environment” under AETCI 36-2002.
Pope could not have known whether his conduct would fall under AETCI 36-2002 without being aware of the definitions and the standards to be applied. Similarly, with no further definitions and standards, those charged with enforcement of the regulation have no guidance to ensure uniform enforce *80 ment that results in arbitrary enforcement of the instruction. The lack of definitions and standards does not create more certainty, it creates the very ambiguity that the void for vagueness doctrine is designed to address. As I find the language of AETCI 36-2002, paragraph 1.1.2.2.5.5., to be unconstitutionally void for vagueness, I would set aside the findings for Specifications 2, 3, and 4 of Charge I and the sentence.

. Because I would reverse on Issue II, I would not reach the remaining issues.

. Specification 3 of Charge I alleges that Pope violated paragraph Ll.2.2.5. of the instruction while Specifications 2 and 4 of Charge I allege that Pope violated paragraph 1.1.2.2.5.5. of the instruction. However all the specifications were treated as if they charged a violation of paragraph Ll.2.2.5.5. All of the specifications charge him with "engaging in verbal conduct of a sexual nature with [the victim] that created an intimidating, hostile, or offensive environment.” The military judge’s instructions to the members stated that to find Pope guilty they had to find that he violated paragraph Ll.2.2.5.5.

. In Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), the Supreme Court stated: "Because of the factors differentiating military society from civilian society, we hold that the proper standard for review for a vagueness challenge to the articles of the [Uniform Code of Military Justice (UCMJ)] is the standard which applies to criminal statutes regulating economic affairs.” Pope does not challenge an article of the UCMJ, but rather an Air Education and Training Command (AETC) instruction adopted by an executive branch agency. The deference that the Supreme Court granted to Congress in regulating conduct in the military should not apply to an instruction adopted by a military commander which has criminal consequences.

. While the majority relies in part on the conclusion that a reasonable member could have found that Pope’s conduct resulted in sexual conduct that created an intimidating or offensive environment, that is simply not the correct test in a constitutional void for vagueness analysis. United States v. Pope, 63 M.J. at 72-73 (C.A.A.F.2006).

. The EEOC Policy Guidance also notes, "sexual flirtation or innuendo, even vulgar language that is trivial or merely annoying, would probably not establish a hostile environment.” Id. at para. C.

. See J. Richard Chema, Arresting "Tailhook”: The Prosecution of Sexual Harassment in the Military, 140 Mil. L.Rev. 1, 7-8 (1993).

. For a discussion as to the difficulty in adopting the EEOC language into the military context, see Michael F. Noone, Chimera or Jackalope? Department of Defense Efforts to Apply Civilian Sexual Harassment Criteria to the Military, 6 Duke J. Gender L. & Pol’y 151 (1999).

. While the majority recognizes that it might be prudent in other contexts to provide further guidance in order to identify potential criminal conduct, it concludes that it is somehow not necessary in a recruiting context.

. This finding addresses only the "notice” prong of the vagueness analysis and does not impact the "adequate enforcement standard” prong.

. See United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (in reviewing the definiteness of a criminal statute the Court was "not concerned with the sufficiency of the information as a criminal pleading” but with "the statute on its face”).