UNITED STATES of America,
Plaintiff–Appellee,

v.

Jan E. TRUE; Fred B. Roth; Thomas E.
O'Dell; Timothy D. Moran; Barry M.
Geiken, Defendants–Appellants.

No. 90–30067.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1990.

Decided Oct. 7, 1991.

David Atkin, Eugene, Or., for defendants-appellants.

Jim Kauble, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before CANBY and TROTT, Circuit Judges, and LEGGE,* District Judge.

CANBY, Circuit Judge:

Jan True and four other individuals appeal their convictions for being present in an area of a National Forest closed to the public. We find that the closure order on which their convictions were based was invalid for failure adequately to describe its scope, as required by Forest Service regulations. Accordingly, we reverse.

## FACTS AND PROCEEDINGS BELOW

Appellants were arrested in an area of the Siuslaw National Forest[1] which the National Forest Service maintains was closed pursuant to 36 C.F.R. § 261.50. After a bench trial based on stipulated facts, appellants were convicted of "[b]eing in a Closure Area in violation of 36 C.F.R. 261.-53(e)...." That regulation states: "When provided in an order, it is prohibited to go into or be upon any area which is closed for the protection of: ... (e) Public health or safety."

The order purportedly closing the area in question was issued by the Forest Supervisor of Siuslaw National Forest. That order provided as follows:

Pursuant to Title 36 CFR 261.50(b), the following act is prohibited on the below described roads and area, described in Attachment A, of the Waldport Ranger District until further notice:

1. Being on the road when closed to entry. 36 CFR 261.54e

2. Go into or be upon the area closed for the protection of public health and safety. 36 CFR 261.53e

Attachment A described the closed area as follows:

Those Forest Service roads and that area North of the Alsea River in Townships 12, 13 & 14, Ranges 9, 10 & 11.

Note: Closures will be moving, periodic and unscheduled. They will affect only a fraction of the above noted area and

lands at any one time. They are effective only if the restriction is posted or you are so advised by a Forest Service Officer.

There was no subsequent closure order or clarification by the Forest Supervisor supplementing this order. Each of the gates on the main roads leading into the area described in the closure order was posted with a sign saying "Area Closed."

Defendants oppose the sale and cutting of old growth timber on public lands. They chose to voice that opposition at the site of one such sale, designated the "Table 503 sale area," which lies within the area described in the closure order. Before their arrest, defendants were aware of the closure order (one was arrested with a copy in her pocket) and that the Table 503 sale area was within the area described in that order. They had inquired about the order at the National Forest Supervisor's Office, where they were told that they would be notified or told when such closure or closures were made.

On the day before their arrest, Forest Service law enforcement officers stopped at least two of the defendants, and pointing in the direction of the area described in the closure order, informed them that they were adjacent to a closed area. Another defendant had earlier seen one of the "Area Closed" signs at one of the gates around the perimeter of the area described in the closure order. Nevertheless, appellants hiked into the area which they knew to be the Table 503 sale area, where they were found by a Forest Ranger who told them that they were in a closed area. All appellants then began voluntarily to leave the area, at which point they were arrested.

## ANALYSIS

There can be little doubt that the appellants intentionally ventured onto land that they knew was considered closed by the Forest Service personnel they encountered. It is also clear that the written closure order that they were convicted of violating

---

* The Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

1. Siuslaw National Forest is located on the central Pacific coast of Oregon.

was issued by an official authorized to do so. The controlling question here is whether the closure order was invalid for failure to comply with applicable regulations. We conclude that the closure was invalid on that account. Our conclusion makes it unnecessary for us to address the question whether the order was so vague that conviction for disobeying it would violate due process.

## I. The Regulations

■ The regulations authorizing the closure of areas of National Forests are found at 36 C.F.R. § 261.50–53. Sections 261.-50(a) & (b) [2] enumerate the officials who are authorized to issue closure orders: "The Chief [of the Forest Service], each Regional Forester, each Experiment Station Director, the Administrator of the Lake Tahoe Basin Management Unit and each Forest Supervisor." Section 261.50(c) requires that "[e]ach order shall: (1) ... describe the area to which the order applies; ... [and] (3) [s]pecify the times during which the prohibitions apply if applied only during limited times." Finally, section 261.50(c) requires that "closure orders shall ... (5) [b]e posted in accordance with § 261.51." Section 261.51 states that:

Posting is accomplished by

(a) Placing a copy of the order imposing each prohibition in the offices of the Forest Supervisor ... and

(b) Displaying each prohibition imposed by an order in such locations and manner as to reasonably bring the prohibition to the attention of the public.

## II. The Description of the Area Closed

Attachment A of the closure order begins by prohibiting, "until further notice," anyone from being on the roads or in the area "North of the Alsea River in Townships 12, 13, & 14, Ranges 9, 10, & 11." The prohibition is apparently definite as to time, from the present until terminated. Its geographical boundaries are definite and the area is capable of being located with reasonable effort. That prohibition, by itself, would probably satisfy both the regulations and due process. *United States v. Vasarajs*, 908 F.2d 443, 449 (9th Cir.1990) ("The Constitution is satisfied if the necessary information is reasonably obtainable by the public").

The order closes, however, with the proviso that

[c]losures will be moving, periodic and unscheduled. They will affect only a fraction of the above noted area and lands at any one time. They are effective only if the restriction is posted or you are so advised by a Forest Service Officer.

Thus qualified, this order does not comply with section 261.50(c)'s requirement that "[e]ach order shall:

(1) ... describe the area to which the order applies ... [and]

(3) [s]pecify the times during which the prohibitions apply if applied only during limited times."

We are unable to interpret section 261.-50(c) as requiring anything less than a description of the closed area and a specification of the times of closure that would permit a reader of the order to determine with reasonable certainty the boundaries of the area *actually* closed and the particular times during which it will be closed. Interpreting it to require only an indeterminate description of *potential* areas and times of closure would not only affront the plain language and self-evident intent of the regulations, but would also pose serious constitutional problems. *See Kollender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903 (1982) ("the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforce-

---

**2.** This and subsequent citations to the regulations are to Title 36 of the Code of Federal Regulations, 1990 edition.

ment").[3]

While the order in issue clearly describes an area that is subject to *potential* closure, it is equally explicit that some of the area described will not be closed, and that those areas actually closed will not be closed much of the time. It even suggests that for some periods of time none of the described area will be closed. Without some supplemental description, this order is not a closure order, conforming to section 261.-50(c), but rather, a prelude to a closure order.

The government concedes that "no other closure order supplements this July 26, 1988 Closure Order and no other closure order was posted in the affected area." It remains a mystery—illustrative of the deficiency of this order—whether, at the time of the appellants' arrest, the Forest Service officials involved considered the entire area described in the order to be closed, or only the Table 503 sale area, or some other portion of the described area.[4] What is clear is that no official authorized by the regulations closed any adequately described area for an adequately specified period of time.

### III. Forest Service actions subsequent to issuance of the closure order

■ The government contends that the necessary supplement to the original order was provided by the posting of "Area Closed" signs at the perimeter of the described area, and by the Forest Service Officer's warning to the appellants that they were adjacent to a closed area. It further contends that, despite the ambi-

guity of description of the closure order, the order was effective as to these appellants because they had actual notice of a concrete prohibition. None of these contentions address the fundamental failure of the Forest Service to issue a closure order by an authorized official that was definitive as to time and place, as required by its own regulations.

#### a. Posting "Area Closed" Signs

One alternative means by which the final clause of the closure order provided for its prohibitions' becoming effective was "if the restriction is posted...." In this case, each of the gates on the main roads leading into the area set forth in the closure order was posted with a sign stating "Area Closed." That posting cannot cure the underlying ambiguity of the order issued by Forest Supervisor Thompson.

Had an authorized official issued a closure order that specified the time of closure, and definitely described the area in which defendants were arrested, then such posting might have put the defendants on notice to inquire as to precisely what area was closed and when it was closed. *United States v. Vasarajs*, 908 F.2d 443 (9th Cir.1990) (conviction for unlawful entry onto a military reservation upheld where signs announcing entry to that reservation put defendant on notice to inquire as to exact boundaries). In this case, however, such inquiry only led back to the original vague notice.

Appellants were aware of the closure order (at least one had seen an Area Closed sign), and inquired as to its effect at the

---

**3.** The Supreme Court regularly interprets statutes and regulations to avoid constitutional problems. *See, e.g., N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 500, 99 S.Ct. 1313, 1318, 59 L.Ed.2d 533 (1979) ("In a number of cases, the Court has heeded the essence of Mr. Chief Justice Marshall's admonition ..., by holding that an Act of Congress ought not be construed to violate the constitution if any other construction remains available.").

**4.** That the Forest Service was intending to close only Table 503 sale area can be inferred from the numerous suggestive references in the stipu-

lated facts to that area, and from the fact that the Government submitted at trial (Exhibit # 2) a map of the area with the entire closure area marked out, and also with Table 503 sale area marked separately. Furthermore, closure of the entire area would contradict the order's statement that "[c]losures ... will affect only a fraction of the above noted area at any one time."

Nevertheless, the significance of the Table 503 sale area is ultimately irrelevant. What area the Forest Service or the appellants thought was closed is immaterial to the disposition of this case because no area was definitively closed by the closure order in question.

Forest Supervisor's office.[5] They were told that they would be notified or told when such closure or closures were made. The result of their inquiry, thus, was that the vagueness of the order was confirmed. In spite of their awareness of the closure order, and after inquiry as to its scope, they remained unenlightened as to what areas would be closed and when. The only thing they knew for certain was that, in spite of the putative closure order and the posted signs, no closure was in effect when they inquired, and that when closures were put into effect, they would apply only to a fraction of the area described, and for limited times. In short, the "Area Closed" signs did not mean what they said. Appellants were entitled to expect, as the regulations require, that if the admonition of those signs were to become effective, it would be by virtue of an act of an official authorized to make them so. There was no such act here.

### b. The Officers' Warning

■ The other means by which this closure order provided that its "moving, periodic and unscheduled" closures could become effective was "if ... you are so advised by a Forest Service Officer." Here, on the day before they were arrested, Forest Service law enforcement officers stopped the appellants and warned them that they were adjacent to a closed area. At the same time, the Officers pointed in the direction of the area described in the closure order. The government contends that this action, in conjunction with the posted signs, satisfied the description and notice required by the regulations.

That contention, essentially, urges us to construe the regulations as permitting delegation of authority to subordinate officials to determine the time and place of closure orders. Such a delegation would invite the Forest Ranger on the spot to determine that a particular part of the forest was closed, and to issue citations accordingly. While we do not suggest that the arresting officers necessarily acted arbitrarily in this case, we recognize that such authority in the hands of law enforcement officers or rangers could lead to arbitrary and discriminatory closure of public lands,[6] especially when, as here, controversial issues are involved.[7] That construction—and that risk—is precluded by the plain language of the regulations.[8] Neither Forest Rangers nor other law enforcement officers are authorized to close areas of the National Forest to the public. Only higher-ranking,

---

5. In so doing, the appellants were complying (perhaps unwittingly) with section 261.50(f), which states: "Any person wishing to use a Forest development road or trail or a portion of the National Forest System, should contact the Forest Supervisor ... to ascertain the special restrictions which may be applicable thereto."

6. Such concerns in enforcement of forest restrictions are nothing new. Witness the preamble to England's Forest Law (Ordinatio Forestae) of 1306, designed to ameliorate the harsh forest laws imposed by the Norman Kings:

> Sometimes, accusations are made of the breach of the forest laws, not upon lawful inquisitions of honest and lawful men of the country, as justice requires, but on the word of one or perhaps two foresters, ... who from hatred or other malicious motive, in order to extort money, accuse or indict persons; and then follow grievous attachments, and the innocent man, guilty neither of negligence nor wilful wrong, is punished.

1 Holdsworth, *A History of English Law*, (Goodhart 7th ed. 1966) 103 (1st ed. 1903) 102 (footnotes omitted) (preamble translated from the original Latin).

7. Government power is particularly susceptible to arbitrary or discriminatory exercise when officials face the prejudices, unpleasantness and risks attendant upon political protest over controversial issues. *See e.g., Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (sit-in demonstrators arrested for "trespassing" in a public lunch counter); *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1939) (labor picketers arrested for "loitering") ("The existence of such a statute, which readily lends itself to harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure, results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview").

8. We do not defer to an agency's interpretation of its own regulation when that interpretation is plainly erroneous or inconsistent with regulations. *See Simpson v. Hegstrom*, 873 F.2d 1294, 1297 (9th Cir.1989).

specifically enumerated officials are permitted to do so,[9] and it is *their* orders which section 261.50 requires to be posted.

A strict construction of the regulations is required by this court's interpretation of the predecessor regulations to those at issue here. In *United States v. Gemmill*, 535 F.2d 1145 (9th Cir.1976), we reversed convictions for trespassing in a closed forest area because the area had been putatively closed by the Forest Supervisor, who was then not authorized by the regulations to do so. *Id.* at 1151–52. We said:

> Absent an explicit delegation from the Secretary, the boundaries of the Forest Supervisors' authority should not be extended into areas the regulations have clearly reserved for higher officials. [footnote omitted].

*Id.* at 1152. Presumably in response to that opinion, the Forest Service amended those regulations to their present form, adding Forest Supervisors to the list of officials authorized to close areas of the forest to the public. The regulation, however, was *not* amended to grant closure authority to lower officers such as Forest Rangers. Consequently, the rule of *Gemmill* applies here.

The admonition by a Forest Service officer that a certain area is closed may contribute to satisfying the requirement that a properly issued closure order be "posted." But such an admonishment cannot cure the fundamental ambiguity of this closure order, which was the only order issued by an official authorized by section 261.50. Nothing in the present record tells us who

decided that some or all of the area described in the original closure was closed at the time the law enforcement officers informed the appellants that they were adjacent to a closed area. All we know is that the Forest Supervisor who issued the original "potential" closure order had not issued any supplemental orders, nor had anyone else who was authorized to do so. A vague order followed by silence is not enough to satisfy the requirements of section 261(a), (b) and (c).

### IV. Actual Notice

■ Finally, the government contends that these defendants had actual notice of the time and place of closure, and that such notice cures the ambiguities of description in the published closure order. That contention fails for reasons similar to those discussed above.

The defendants doubtless had actual notice that the area which they intentionally entered was considered closed by some officials in the Forest Service.[10] But what they had actual notice of was an order which was invalid because no authorized official had specified in it the areas and times of closure.

If a law enforcement officer is not authorized to close public areas, then notice to citizens of an attempted order by such an officer cannot transform that attempt into an effective closure order. The appellants' subjective awareness of subordinate officials' actions cannot redeem the Forest Service's failure to follow its own regulations.[11]

---

9. Section 251.50(a) and (b) state: "The Chief, each Regional Forester, each Experiment Station Director, the Administrator of the Lake Tahoe Basin Management Unit and each Forest Supervisor may issue orders which close or restrict the use of described areas within the area [road or trail] over which he has jurisdiction."

10. Aside from being warned by the Forest Service Officers, and seeing an "Area Closed" sign, the government asserts that the possession by one of the appellants of a copy of the published closure order served to augment the appellants' actual notice, making closure, as to them, effective. The defect in that assertion is demonstrated, however, by consulting the inconclusive language of that order.

11. *United States v. Mowat*, 582 F.2d 1194 (9th Cir.), *cert. denied* 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 426 (9th Cir.1978) is distinguishable. In *Mowat*, we held that the due process clause and Administrative Procedure Act (APA) permitted conviction for trespass when appellants had actual notice of off-limits area, though the closure order had not been published in the Federal Register as required by the APA. There was no contention, however, that the area closed was inadequately described, or that the closure order had not been issued by an authorized official. The defect in *Mowat* was the failure of the order to be published in the Federal Register as required by the APA, which requirement "does not affect persons who have 'actual and

## CONCLUSION

The provision of this closure order noting that its application would be "moving, periodic and unscheduled" and "affecting only a portion of the above noted area ... at any one time," converted an otherwise clear order into an extraordinarily vague and flexible one. Regardless of how well-intended, or how specific, the subsequent actions of subordinate officials might have been, they could not render the original open-ended order specific enough to comply with the Forest Service's own regulations. Nor could those officials effect the closure on their own authority.

Defendants' convictions are REVERSED.

LEGGE, District Judge, dissenting:

I respectfully dissent.

The majority concludes that the closure order was invalid because it did not adequately describe its scope, as required by the Forest Service regulations. The problem with the closure order is its description of the closed area. The majority holds that the Note at the end of the closure order, under which the application of the closure order to specific areas could be modified, so conditioned the order as to make it unenforceable. It is that holding with which I respectfully differ.

The closure order was issued pursuant to 36 C.F.R. § 261.50 (1990) by the national forest supervisor. The parties stipulated that the forest supervisor was vested with authority to do so. They also stipulated that the closure order was posted at the Waldport and Corvalis offices. The order described the area that was subject to the order. The Note was an attempt to moderate the impact of closing the entire area, by limiting it to only those areas required at a particular time for purposes of public health and safety. The Note was a disretional exercise of the power not to enforce the full scope of the closure order. I believe that the exercise of that discretion did not destroy the enforceability of the entire order.

My view is that the central issue is the adequacy of the notice to defendants that they were in a closed area. In *United States v. Vasarajs*, 908 F.2d 443, 449 (9th Cir.1990), the court said that "notice" can even include some obligation on the part of the defendants to obtain the necessary information: "In short, due process does not require that citizens be provided actual notice of all criminal rules and their meaning. The Constitution is satisfied if the necessary information is reasonably obtainable by the public." In *United States v. Mowat*, 582 F.2d 1194, 1201–03 (9th Cir.1978), *cert. denied*, 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 426 (1978), the court upheld a closure order even though it was not published in the Federal Register as it should have been. The court forgave that procedural defect because the defendants had actual knowledge of the prohibition.

The Note in this case stated that the closure would be "effective only if the restriction is posted or you are so advised by a Forest Service Officer." Both of those conditions were met. There is no doubt from the record that these defendants had actual notice that the area which they entered, and in which they were arrested, was a closed area.

For those reasons, I would affirm the judgment of the District Court.

---

timely notice of the terms' of the regulation." *Mowat*, 582 F.2d at 1201.

By contrast, the closure in question here was never adequately described by the Forest Supervisor who issued it. The only closure of which defendants had actual notice was delineated by officers unauthorized to close the area.