105 F.3d 660
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph M. GLISSON, Defendant-Appellant.
 No. 96-2328.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 17, 1996.*
Decided Dec. 23, 1996.
 
 Before MANION, ROVNER and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 On September 20, 1995, Forest Service Supervisor Louise Odegaard issued Order No. 95-08-18 closing the Cripps Bend Timber Sale ("CBTS Order"), a portion of the Shawnee National Forest, to the public pursuant to 36 C.F.R. § 261.50. Attached to the CBTS Order was a map of the affected area. On September 21, 1995, Defendant Joseph M. Glisson went to the Shawnee National Forest to protest logging on the Cripps Bend Timber Sale. Glisson entered the area, after being told by a Forest Service Officer that the area was closed, and received a citation. He entered again and was then arrested. The road Glisson used to enter Cripps Bend was posted with the CBTS Order and Map. After a bench trial before Magistrate Judge Phillip M. Frazier,[1] Glisson was found guilty of entering the Cripps Bend Timber Sale and refusing to leave. He was fined $230. The district court affirmed the conviction, and Glisson now appeals.
 
 
 2
 Glisson raises three grounds for reversal of his conviction. First, he argues that the CBTS Order was invalid because it did not comply with the requirements of 36 C.F.R. § 261.50(c). Second, he argues that the closure order was invalid because it was not posted in compliance with 36 C.F.R. § 261.51. Finally, he argues that the closure order violated his due process rights by being so vague as to provide him no notice and to allow for arbitrary enforcement.[2]
 
 ANALYSIS
 
 3
 Whether the closure order complies with the Forest Service regulations is a question of law that we review de novo. The facts found by the magistrate judge are reviewed for clear error.
 
 
 4
 Section 261.50(c) provides that each closure order shall "describe the area to which the order applies" and "[b]e posted in accordance with § 261.51."[3] 36 C.F.R. § 261.50(c). Section 261.51 states: "Posting is to be accomplished by ... [d]isplaying each prohibition imposed by an order in such location and manner as to reasonably bring the prohibition to the attention of the public."
 
 
 5
 The CBTS Order provides in relevant part that:
 
 
 6
 Pursuant to 36 CFR, Section 261.50(a) and (b), the following acts are prohibited on the area described in this order within the Shawnee National Forest until further notice.
 
 
 7
 (1) Being in or entering upon lands described as the Cripps Bend Timber Sale which is closed for the purpose of protection of the public health and safety. 36 CFR 261.53(e).
 
 
 8
 (2) Being in or entering upon lands described as the Cripps Bend Timber Sale which is closed for the purpose of protection of public property. 36 CFR 261.53(f).
 
 
 9
 * * *
 
 
 10
 This order includes all National Forest System Land, Forest Development Roads including ski trails within the Shawnee National Forest Boundary described as the CRIPPS BEND TIMBER SALE which is further described on the map attached thereto [sic] and made part of this order. BEING IN OR ENTERING UPON SUCH LAND IS EXPRESSLY PROHIBITED.
 
 
 11
 (Order No. 95-08-18) (emphasis in original.) The map refered to in the CBTS Order identifies the Cripps Bend Timber Sale as "Township 10 South, Range 3 West, Sections 26 and 27, Jackson County, Illinois" in an inset. (Closure Order Map, attached to Order No. 95-08-18.) The map also has a hand-drawn, dashed line showing the contours of the closed area.
 
 Compliance with Forest Service Regulations
 
 12
 The Forest Service regulations require that "each order shall ... describe each area to which the order applies." 36 C.F.R. § 261.50(c). We agree with the district court that the description of the closed area contained in the closure order satisfies this requirement. Cf. United States v. True, 946 F.2d 682, 684 (9th Cir.1991) (closure order describing area as "North of the Alsea River in Township 12, 13 & 14, Ranges 9, 10, & 11" probably complied with § 261.50). The verbal description of the Cripps Bend Timber Sale together with the pictoral depiction describes the area affected by the closure order.
 
 
 13
 Glisson attempts to distinguish the CBTS Order from the order involved in True by arguing that the True order gave geographical boundaries to add clarity, whereas the CBTS Order did not. Leaving aside the fact that § 261.50 does not require an order to describe the affected area using geographical boundaries, it appears from the CBTS map that there are no clear geographic landmarks surrounding the closed area, and that it therefore would have been impossible to clarify the order in this manner. Glisson argues that a powerline running along part of the south-west border and a road running along part of the southern border could have been used to clarify the order. However, had Supervisor Olegaard referred to these man-made landmarks the order would have implied the closure of a much larger area than actually was closed,[4] or the order would have been far more confusing. We agree with the district court that the level of precision Glisson expects would have been virtually impossible.
 
 
 14
 According to 36 C.F.R. § 261.51 "posting is accomplished by ... [d]isplaying each prohibition imposed by an order in such location and manner as to reasonably bring the prohibition to the attention of the public." Here, the CBTS order and map were attached to two posts at the location where Glisson entered the closed area. Glisson argues that this posting did not satisfy § 261.51 because the entire perimeter of the closed area was not posted and that he therefore did not receive proper notice of the closure. However, Glisson offers no support for his contention that § 261.51 requires posting of the entire perimeter, and our independent research has revealed none.
 
 
 15
 Section 261.51 requires posting in such a manner that the public receives reasonable notice of the prohibition. Glisson had reasonable notice of the prohibition. As we stated above, the CBTS Map, posted at the location Glisson entered the area, shows the area subject to the order, and the order clearly prohibits being in or entering upon the closed land.
 
 
 16
 Glisson also received actual notice when Forest Service Officers told him that the area he subsequently entered was closed. Moreover, Glisson entered the closed area twice: first, he received a citation and the second time he was arrested. Further, the magistrate judge found that Glisson entered the closed area, knowing it was closed, for the purpose of being arrested. Thus, Glisson received proper notice of the conduct that was prohibited.[5]
 
 Vagueness
 
 17
 Finally, Glisson argues that, even if the CBTS Order and Map comply with the relevant regulations, they are so vague that his conviction violates the Due Process Clause. Specifically, he argues that the vagueness of the CBTS Order and Map failed to give him adequate notice and allowed for arbitrary enforcement by the Forest Service Officers who arrested him. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement."[6] Kolender v. Lawson, 461 U.S. 352, 357 (1983). Because Glisson does not argue that the CBTS Order threatens his First Amendment free speech interests, we evaluate the order in light of the specific facts of this case. Maynard v. Cartwright, 486 U.S. 356, 361 (1988).
 
 
 18
 Here, both prongs of the vagueness doctrine are satisfied. First, the CBTS Order clearly states that "[b]eing in or entering on lands described as the Cripps Bend Timber Sale" is prohibited. The CBTS Map incorporated by the Order identifies the closed area with sufficient definiteness that "reasonable persons would know that their conduct is at risk." Maynard, 486 U.S. at 361. Second, arbitrary or discriminatory enforcement was not encouraged because, again, the CBTS Order and Map were sufficiently definite to limit forest service officials' enforcement authority. Therefore, the CBTS Order defined the prohibited conduct clearly enough that forest service officials were not free to enforce the order in an arbitrary or discriminatory manner.[7]
 
 
 19
 For these reasons, the district court judgment is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 The parties consented to proceed before a magistrate judge. (R. 8.)
 
 
 [2]
 These are identical to the issues Glisson raised in his appeal to the district court
 
 
 [3]
 Section 261.50(c) also requires that orders "describe the road or trail to which the order applies," "[s]pecify the times during which prohibitions apply if applied only during limited times" and "[s]tate each prohibition which is applied." Glisson does not argue that these provisions were violated by the CBTS Order
 
 
 [4]
 The road and the powerline Glisson refers to intersect, however, the closed area does not involve a large piece of land located in the "V" where they meet. Specifically, the closed area runs along part of the powerline, then veers north away from the powerline. The closed area then runs east, where it meets the road. The road primarily goes north/south but then turns to head east/west; immediately after the road turns east/west is where it forms part of the boundary of the closed area. Using these landmarks for "clarification" could be interpreted to mean that an area of land approximately one-third the size of the area actually closed was included in the CBTS Order when, in fact, it was not
 
 
 [5]
 Although Glisson devotes a large portion of his brief to arguing the requisite mental state for his violation, this is irrelevant to whether the method used by the Forest Service to post the CBTS Order gave the public reasonable notice of the prohibitions
 
 
 [6]
 Our analysis treats the CBTS closure order as the functional equivalent of a statute because the result for Glisson (i.e. his conviction) is identical
 
 
 [7]
 The Government argues that there was sufficient evidence to convict Glisson. We do not understand why this argument is presented as Glisson does not argue otherwise