DECISION AND JOURNAL ENTRY
Defendant, Rainier Moore, appeals from convictions by the Summit County Court of Common Pleas for aggravated burglary and rape. We affirm.
On June 29, 1998, Defendant was indicted on two counts of aggravated burglary, in violation of R.C. 2911.11(A)(1); and three counts of rape, in violation of R.C. 2907.02(A)(2). On December 14, 1998, the indictment was amended to add two counts of rape, in violation of R.C. 2907.02(A)(2); one count of burglary, in violation of R.C. 2911.12(A)(1); and one count of intimidation of a crime victim or witness, in violation of R.C. 2921.04(A). Just prior to the start of trial, the State moved to dismiss one charge of rape and amend the indictment to correct certain information that had been inadvertently switched. The court granted both motions. Following the completion of the State's case, the court ordered that one count of burglary, one count of rape, and the count of intimidation of a crime victim or witness be dismissed pursuant to Crim.R. 29. On January 19, 1999, the jury found the Defendant guilty of two counts of aggravated burglary, and four counts of rape.
On February 22, 1999, Defendant moved the court to vacate its verdict and dismiss the charges against him because he alleged his rights to a speedy trial were violated. On March 9, 1999, the court found Defendant's motion to be untimely and denied it.
On March 3, 1999, Defendant was sentenced to ten years incarceration on each of the two counts of aggravated burglary and ten years on each of the four counts of rape. The sentence for each count of rape is to be served concurrently with the other sentences for rape. The sentences for each count of aggravated burglary are to be served concurrently, but consecutive to the sentences for rape. The trial court additionally found Defendant to be a sexual predator. Defendant timely appealed and has raised eleven assignments of error.
 ASSIGNMENT OF ERROR I The trial court erred when it granted the state's motion to amend the indictments on the morning trial began where the amendments changed the identity of the crimes for which the grand jury issued indictments.
Defendant has argued that the trial court erred by permitting the State to amend the indictments on the day the trial was to begin. Specifically, Defendant has alleged that the amendments impermissibly altered the crime charged in the indictment by permitting the State to switch the victims, the addresses, and the dates of the crimes. We disagree.
Crim.R. 7(D) provides in part:
 The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury.
A court may amend an indictment to correct a clerical error.State v. Earle (1997), 120 Ohio App.3d 457, 467.
The crimes set forth in the original indictment have not changed. Defendant was originally charged with aggravated burglary and burglary. The amended indictment maintained those same crimes. The only alteration that was made was the pairing of the correct information regarding the victim, the date, and the location with the correct charge. Defendant had notice of both the crimes charged and the names of the victims, their addresses, and the dates upon which the alleged crimes occurred. As the trial court noted, the changes that were permitted merely corrected a typographical error.
Appellant's first assignment of error is without merit.
 ASSIGNMENT OF ERROR II The trial court erred when it admitted into evidence the map prepared by the state because the map contained other acts evidence that the court had previously excluded from evidence.
Defendant has challenged the propriety of the admission of other acts evidence under Evid.R. 404(B). Specifically he has alleged that the trial court erred by admitting into evidence a map outlining the locations of the various attacks Defendant was accused of committing.
Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, a trial court enjoys broad discretion in determining the admissibility of evidence, and its decision should not be reversed absent an abuse of discretion that has caused the defendant to suffer material prejudice. State v. Davis (Aug. 21, 1991), Medina App. No. 1952, unreported at 3, citing State v. Hymore (1967),9 Ohio St.2d 122, 128.
Defendant has argued that the map improperly contained other acts evidence in that it showed an address where an attack took place that was not the subject of this case. Additionally, Defendant has argued that the inclusion of this address was prejudicial because the testimony of the witness relating to such attack was excluded. While Defendant admits that this address was "whited out" prior to submission to the jury, he has argued that this did not eliminate the prejudice he suffered. No testimony was given regarding the complained of information. Additionally, as the address was redacted from the map, this information was not provided to the jury in the form of the exhibit. Because the information was redacted, it would be impossible for the jury to discern that this was, in fact, another address. Therefore, as Defendant can not show how he was prejudiced by evidence that was never provided to the jury, the trial court did not abuse its discretion in admitting the map highlighting the proximity of the locations of the crimes. Defendant's second assignment of error is without merit.
 ASSIGNMENT OF ERROR III The trial court erred when it entered convictions for the offenses involving Tia [W]ade because the verdicts were not supported by sufficient evidence and the verdicts were against the manifest weight of the evidence.
 ASSIGNMENT OF ERROR IV The trial court erred when it entered convictions for the offenses involving Chauncey [L]ove because there was insufficient evidence identifying [Defendant] as the perpetrator.
In his third and fourth assignments of error, Defendant has argued that his convictions were against the manifest weight of the evidence and were based upon insufficient evidence. This court disagrees.
The function of an appellate court on review is to assess the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996), 115 Ohio App.3d 646, 652.
While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, we must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This action is reserved for the exceptional case where the evidence weighs heavily in favor of the defendant. Id. at 340. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
Defendant was charged with one count of aggravated burglary against Chauncey Love, one count of aggravated burglary against Tia Wade, one count of rape against Chauncey Love based upon vaginal intercourse, one count of rape against Tia Wade based upon cunnilingus, one count of rape against Tia Wade based upon vaginal digital penetration, and one count of rape against Tia Wade based upon anal digital penetration. R.C. 2911.11(A)(1) establishes that:
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]
R.C. 2907.02(A)(2) prohibits a person from engaging in "sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" is defined as:
 vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
At trial, evidence was introduced that established that Defendant committed the acts as charged.
Chauncey Love testified that on May 16, 1998, she had fallen asleep with the television on with her two-year-old daughter in the bed beside her. The only other person in the house was Ms. Love's grandmother. Ms. Love was awakened at approximately 3:00 a.m. by another individual in the room who placed a blanket and pillow over her face. The television had been turned off making the room completely dark. In a low, whispering voice he directed her "Let me do what I have to do so I can leave, so I can get out of here." The individual removed Ms. Love's tampon and placed his penis inside of her. The individual continued his attack for approximately five minutes. Ms. Love pretended to become sick and the individual stopped. After unsuccessfully trying to convince her to go to another room, the individual informed Ms. Love that he would return the next night and fled. Ms. Love's head and face were covered during the entire attack. While Ms. Love was unable to identify her attacker, she was able to give police a description of his physical build. Ms. Love knew Defendant casually as an acquaintance from the neighborhood.
Tia Wade testified that on June 21, 1998, she was home alone. As she was nervous about being by herself, she stated that she had turned on numerous lights throughout the house and the television. She had closed and locked all of the doors and windows in the house with the exception of the kitchen windows. She fell asleep on the living room floor while watching TV. She awoke shortly after 2:00 a.m. to find all the lights extinguished, the television off, and someone in the room with her. Ms. Wade testified that she tried to get up but Defendant placed a blanket over her head and forced her back to the floor. In a low, raspy voice, Defendant told her "Just let me do what I came here to do and I will leave." He additionally then described to Ms. Wade the various acts he would perform on her. Ms. Wade testified that Defendant removed her tampon, threw it across the room, and performed cunnilingus on her. She further testified that he placed his fingers in her rectum and in her vagina. After performing these acts, Ms. Wade testified that Defendant started to place his penis inside of her. Out of fear, she tried talking to him to get him to stop. At this point she recognized his voice and informed him that she knew who he was. Ms. Wade testified that she knew Defendant from school. After a great deal of pleading, Defendant subsequently let Ms. Wade up and she sat and talked with Defendant for approximately an hour and a half. While with Defendant, Ms. Wade testified that she "could see his face as plain as day." During the pendency of the conversation, Defendant indicated to her that he had done this before and that he needed help. Prior to leaving, Defendant told Ms. Wade to check her windows especially the kitchen windows. Upon checking, it was discovered that the screen from the kitchen window had been removed, and several items around the sink were askew.
Detective Ohls testified that after interviewing Ms. Wade, they arrested Defendant. Upon arriving at the police station, Defendant was read his rights. Detective Ohls testified that Defendant informed him that he was sick and needed help. Defendant informed Detective Ohls that he had entered Ms. Wade's home through a window. He further stated that once inside the house he extinguished all of the lights and then got on top of Ms. Wade. Defendant also told Detective Ohls that he had digitally penetrated Ms. Wade vaginally. Defendant further confessed to entering a residence on Case Street, the location of Chauncey Love's home.
Upon review of the evidence presented at trial, Defendant's convictions for crimes against Ms. Wade were not against the manifest weight of the evidence and thus were supported by sufficient evidence. While Defendant has alleged that there was insufficient evidence to support that he was the perpetrator in the crimes against Ms. Love, this allegation is not supported by a review of the evidence. Although Ms. Love was unable to identify Defendant as the perpetrator, other evidence was presented to the court to sustain his conviction. As at trial, direct and circumstantial evidence are weighed equally. State v. Jenks, 61 Ohio St.3d at paragraph one of the syllabus. Therefore, after weighing the evidence in a light most favorable to the prosecution, there was sufficient evidence to substantiate beyond a reasonable doubt that Defendant was the perpetrator.
Defendant's third and fourth assignments of error are without merit.
 ASSIGNMENT OF ERROR V The trial court erred when it sentenced [Defendant] to a term of incarceration greater than the minimum term without making the required findings on the record that the minimum term would demean the seriousness of the offense or would not adequately protect the public.
 ASSIGNMENT OF ERROR VI The trial court erred when it sentenced [Defendant] to maximum terms of incarceration for more than one offense for conduct arising out of the same incident without making a finding and stating its reasons.
 ASSIGNMENT OF ERROR VII The trial court erred when it sentenced [Defendant] to consecutive terms of incarceration without making a finding and stating its reasons.
In his fifth, sixth, and seventh assignments of error, Defendant has challenged the propriety of the sentence imposed upon him. For the purposes of expediency and ease of discussion, these assignments of error will be addressed concurrently. In these assignments of error, Defendant has argued that his sentence is improper under R.C. 2929.14(E), 2929.14(C), and 2929.19(B)(2). We disagree.
When reviewing an appeal of a sentence, an appellate court may modify a sentence or remand the matter to the trial court for resentencing if the court finds that the trial court clearly and convincingly acted contrary to law or the record. R.C.2953.08(G)(1) and (4). Clear and convincing evidence is that "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121,122, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
Under R.C. 2929.14(C), a trial court may only impose the maximum prison term on a defendant who meets one of four criteria. The only two criteria relevant to this appeal are whether the defendant "committed the worst form of the offense" or "pose[s] the greatest likelihood of committing future crimes[.]" Id. In order for the sentence to withstand scrutiny on appeal, the trial court must make a finding with respect to one of the four criteria and give reasons for that finding. R.C. 2929.19(B)(2)(d).
Similarly, R.C. 2929.14(E)(4) requires a trial court to make three findings before prison terms may be imposed consecutively.
 [T]he court may require the offender to serve the prison terms consecutively if the court finds [1] that the consecutive service is necessary to protect the public from future crime or to punish the offender and [2] that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and [3] if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Id. The trial court must also give "its reasons for imposing the consecutive sentences[.]" R.C. 2929.19(B)(2)(c).
In construing R.C. 2929.14(B), the Ohio Supreme Court has noted that "the verb `finds' as used in this statute means that the court must note that it engaged in the analysis and that [the sentence was imposed] for at least one of the [enumerated] sanctioned reasons." State v. Edmonson (1999), 86 Ohio St.3d 324,326. Therefore, prior to imposing consecutive sentences under R.C. 2929.14(E), the trial court shall note on the record that it engaged in the appropriate analysis as contemplated in the law and it shall enumerate the reasons underlying the resulting sentence.
In the case at bar, a review of the sentencing journal entry reveals the following:
 The Court finds that the shortest term would demean the seriousness of the offenses and would not adequately protect the public. The Court further finds that the offender committed the worst form of [the] offense and that he poses the greatest likelihood of committing future crimes.
 The Court finds that consecutive terms are necessary to protect the public and punish the offender and are not disproportionate to the conduct and danger the offender poses. The Court further finds that the offenses were committed while the offender was under the sanctions of community control and the harm inflicted was so great that a single term does not adequately reflect the seriousness of the offender's conduct.
 The trial court stated the required findings required to impose maximum and consecutive sentences. Additionally, the court gave reasons for imposing the consecutive sentences. Therefore, the court did not err in sentencing Defendant to maximum and consecutive sentences.
Defendant's fifth, sixth, and seventh assignments of error are without merit.
 ASSIGNMENT OF ERROR VIII The trial court erred in adjudicating [Defendant] to be a sexual predator.
Defendant has argued that the trial court erred in adjudicating him to be a sexual predator. We disagree.
First, Defendant has argued that the sexual predator determination was improperly held after he was sentenced. R.C.2950.09(B)(1) provides in part: "The judge shall conduct the [sexual predator] hearing prior to sentencing and, if the sexually oriented offense is a felony, may conduct it as part of the sentencing hearing[.]" R.C. 2950.09(B) (1). The Defendant was convicted of two counts of aggravated burglary and four counts of rape. All of the charges Defendant was convicted of are first degree felonies. Defendant's sexual predator hearing was conducted as part of his sentencing for the aforementioned crimes. Therefore, Defendant's contentions regarding the timeliness of his sexual predator hearing are without merit.
Second, Defendant has argued that a meaningful hearing was not held because no witnesses or testimony were presented to the court. Defendant has not alleged that he was prohibited from offering any evidence he wished to have considered by the court. This court has previously held a defendant is not denied his right to a meaningful hearing where he is given the opportunity to present evidence even if he does not avail himself of that opportunity. State v. White (Feb. 9, 2000), Summit App. No. 19387, unreported at 4.
Finally, Defendant has argued that the trial court did not have evidence upon which it could make a determination that he was a sexual predator. Pursuant to R.C. 2950.09(B)(2), when determining whether the individual is a sexual predator, the court must consider the following factors:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
Prior to finding Defendant to be a sexual predator, the trial court indicated that it considered all relevant factors as enumerated in R.C. 2950.09. The trial court found that force and threats were used to carry out the crimes, there were multiple victims, and Defendant had a prior criminal record. Specifically the court expressed concern for the fact that Defendant preyed upon multiple victims who lived in close proximity to Defendant's residence. Therefore, as the court considered and found evidence of several relevant factors, the trial court did not err in adjudicating Defendant a sexual predator. Defendant's eighth assignment of error is without merit.
 ASSIGNMENT OF ERROR IX
[Defendant] was denied his right to a speedy trial.
Defendant has alleged that he was denied his right to a speedy trial because he was not tried until two hundred and three (203) days after he was arrested. Defendant has further argued that because he was held in prison during that time, when computing the time for a speedy trial, he should be permitted to count each day he spent in jail as three days. Thus, Defendant argues that because he was not tried within ninety (90) days of his arrest, he was denied the right to a speedy trial. This court does not agree.
Pursuant to R.C. 2945.71(C)(2), a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after his arrest." When computing the time for the purposes of applying R.C. 2945.71(C), "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). However, when a defendant is held in jail on a probation holder, the triple-count provision is inapplicable. State v. Martin (1978), 56 Ohio St.2d 207,211.
Defendant was held in jail on a probation holder for having violated his probation. Therefore the triple-count provisions were inapplicable and Defendant had to be tried within two hundred and seventy days of his arrest. Defendant was tried within two hundred and three days of his arrest. Thus, Defendant was not denied his right to a speedy trial. Defendant's ninth assignment of error is without merit and is overruled.
 ASSIGNMENT OF ERROR X
[Defendant] was denied effective assistance of counsel.
Defendant has alleged that he was denied effective assistance of counsel as guaranteed him by the Sixth andFourteenth Amendments to the United States Constitution. We disagree.
The United States Supreme Court has set forth a two-part test to determine if a conviction or sentence should be reversed based upon ineffective assistance of counsel. Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. "First, the defendant must show that counsel's performance was deficient."Id. To meet this standard Defendant must be able to prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id.
Second, Defendant must establish that the deficient performance by counsel was serious enough that it resulted in prejudice to the defendant "[so] as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. The Supreme Court of Ohio set out a substantially similar standard in State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus, holding "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."
"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 80 L.Ed.2d at 694. There are numerous ways for counsel to provide effective assistance in any given case. In light of these facts, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45,49, certiorari denied (1980), 449 U.S. 879,66 L.Ed.2d 102.
While Defendant has alleged a myriad of ways in which he claims his counsel was ineffective, Defendant has failed to show that he was in any way prejudiced by these actions or inactions of his counsel. Additionally, Defendant has failed to indicate that the result of the trial would have been different had his counsel acted in a different manner. Therefore, Defendant has failed to prove that he was denied the assistance guaranteed him by the United States and Ohio Constitutions. Defendant's tenth assignment of error is without merit.
 ASSIGNMENT OF ERROR XI The trial court erred in imposing maximum sentences because the standard used by the court, that the offender committed "one of the worst forms of the offense" or poses the "greatest likelihood" of committing future crimes, is unconstitutionally vague.
Defendant has alleged that R.C. 2929.14(C) is unconstitutional and thus void because it is impermissibly vague. This court disagrees.
A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden, or if the statute encourages arbitrary and discriminatory enforcement. Kolender v. Lawson (1983),461 U.S. 352, 357, 75 L.Ed.2d 903, 908. "[V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."United States v. Batchelder (1979), 442 U.S. 114, 123,60 L.Ed.2d 755, 764. However, sentencing guidelines are not intended to inform the offender of the consequences of violating a criminal statute, but rather are intended to serve as a guide for judges when imposing sentence upon a criminal defendant. State v.Mushrush (June 18, 1999), Hamilton App. No. C-980658, 1999 Ohio App. LEXIS 2763, at *17, citing United States v. Wivell (C.A.8, 1990), 893 F.2d 156, and State v. Jacobson (1998), 92 Wn. App. 958,965 P.2d 1140.
R.C. 2929.14(C) permits the judge discretion in reviewing the particular facts of a case in order to impose an appropriate sentence for the crime committed. This discretion is imperative in determining the fairness of a sentence. While R.C. 2929.14(C) is broadly phrased to permit this discretion, it is not unconstitutionally void for vagueness as it does not fail to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden, or encourage arbitrary and discriminatory enforcement of the laws. Defendant's eleventh assignment of error is without merit.
Defendant's eleven assignments of error are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant. Exceptions.
 ______________________________ LYNN C. SLABY, FOR THE COURT.
BATCHELDER, P.J. and CARR, J. CONCUR.