# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43496-2015

STATE OF IDAHO,                          )
                                         )    **Boise, December 2016 Term**
      Plaintiff-Respondent,        )
                                         )    **2016 Opinion No. 147**
v.                                       )
                                         )    **Filed: December 21, 2016**
BLAIR OLSEN,                             )
                                         )    **Stephen W. Kenyon, Clerk**
      Defendant-Appellant.        )
                                         )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Jefferson County.  Hon. Gregory W. Moeller, District Judge.

The judgment of the district court is <u>affirmed</u> <u>in</u> <u>part</u> <u>and</u> <u>remanded</u> <u>with</u> <u>intructions</u>.

Gary Cooper, Cooper & Larsen, Chartered, Pocatello, argued for appellant.

Kenneth K. Jorgensen, Deputy Attorney General, Boise, argued for Respondent.

_____

EISMANN, Justice.

This is an appeal out of Jefferson County from a judgment that the Defendant was guilty of three counts of misuse of public funds.  We affirm the judgment as to one count and remand this case to the district court with instructions to vacate the convictions as to the other two counts.

## I.

## Factual Background.

Blair Olsen served as sheriff of Jefferson County from January 1989 until May 2015, when he resigned due to his conviction in this case.  While he was the sheriff, the county provided Mr. Olsen with two cell phones and paid the bills for those phones.  It initially did so because of unreliable service in different sides of the county.  He carried one cell phone with a service provider for use in one side of the county and the other cell phone with a different service

provider for use in the other side of the county. He also carried a personal cell phone and paid the charges for that service plan from his own funds. Once county-wide coverage was available from one of the providers, he discontinued service with the other provider and had both of his county-provided cell phones with the same provider. One cell phone was to be his primary cell phone and the other was to be his backup cell phone. At the same time, he terminated his personal cell phone service, but had the telephone number of his personal cell phone transferred to the backup cell phone. At some point, he permitted his wife to carry the backup cell phone for her personal use.

In 2012, Mr. Olsen had an opponent in the primary election to be held in May. A few days before the election, an employee in the county clerk's office contacted a county commissioner about Mr. Olsen allowing his wife to use the backup cell phone. The county commissioner contacted Mr. Olsen about the issue, and she testified that "he explained to me that it was his backup phone and that his wife had the phone to keep it charged and to keep it accessible to him." The county commissioner also testified that Mr. Olsen told her that his wife did use the backup cell phone for her personal use. The commissioner called a special meeting with the other two commissioners to inform them in case it became an issue in the election. The commissioners met on May 4, 2012, and decided to add a provision regarding cell phone usage in the county personnel policy. Mr. Olsen discontinued his wife's use of the backup cell phone to avoid her use of the phone becoming a political issue.

On July 9, 2012, the commissioners adopted a county cell phone policy. It included a provision stating: "Department Heads are responsible for managing the personal use of County provided cellular phones. Jefferson County shall not be held liable for additional costs incurred from employees' personal cell phone usage and shall be reimbursed by the same for equal value."

The issue of Mr. Olsen's wife using the backup cell phone became an issue not only in the primary election but also in the upcoming general election in November. On July 27, 2012, the county commissioners issued a written statement which provided in part:

> The Board of County Commissioners, both past and present, have [sic] authorized the expenditure of a "back-up" cell phone for the Sheriff. The County Commissioners are responsible for reviewing claims submitted. It is their responsibility to oversee appropriate expenditures. All cell phone expenditures were approved since the implementation of cell phones to the county.

We trust that each Elected Official and Department Head will use County resources in the most appropriate manner, according to their own particular circumstances. This County is lead [sic] by intelligent, hard working, dedicated officials who are doing the best possible job with available resources. The Board has no desire to micromanage the daily use of County cell phones. Department Heads and Officials are very capable of that task. We expect those placed in charge of cell phones to make wise choices in the use of this valuable resource. We have encouraged all entrusted with this resource, through our Cell Phone Policy, to use and administer their cell phones appropriately for the best use of taxpayer funds and to avoid any misuse.

Mr. Olsen asked the county commissioners to refer the matter to the Attorney General in an attempt to clear his name, and the commissioners did so. On January 23, 2015, a deputy attorney general obtained an indictment against Mr. Olsen charging him with three felony counts of knowingly using public money to make purchases for personal purposes based upon his wife's use of the backup cell phone. The charges were tried to a jury, and Mr. Olsen was found guilty of all three counts. The district court withheld judgment and placed Mr. Olsen on three years' probation, and he timely appealed.

## II.

### Did the Prosecution of Mr. Olsen Violate the Separation of Powers?

Mr. Olsen contends that the prosecution of Mr. Olsen violated Article II, section 1, of the Idaho Constitution, which states:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Article XVIII, section 5, of the Idaho Constitution provides that the legislature shall establish a system of county governments, and the legislature has provided that "[e]ach county must have a board of county commissioners consisting of three (3) members." I.C. § 31-701. The duties of the county commissioners include supervising the official conduct of all county officers, I.C. § 31-802; taking care of, managing and controlling the county property, I.C. § 31-807; examining and auditing the accounts of all officers having the care, management, collection or disbursement of moneys belonging to the county, I.C. § 31-809; and examining, settling and

3

allowing all accounts legally chargeable against the county, ordering warrants to be drawn on the county treasurer therefor, and providing for the issuing of the same, I.C. § 31-810.

Mr. Olsen asserts, "Once the Jefferson County Commissioners made a decision that the cell phone had a valid public benefit, a decision had been made by a branch of government that had authority to act and the courts must defer to the decision making authority of the coordinate branch of government." He is apparently referring to the commissioners' decision to pay the bill from the service provider after learning that Mr. Olsen's wife was using his backup cell phone.

There is no contention that Mr. Olsen's compensation included the right to have a county cell phone for personal use to be paid for by the county. Rather, the testimony was that when the issue of the use of the backup cell phone by Mr. Olsen's wife came to the attention of the county commissioners, they investigated the matter and determined that her use did not increase the cost to the county for the cell phone plan. According to one of the county commissioners,

> [I]n my investigation what I found was that that particular cell phone had never exceeded the bounds or the limits of its plan, so there was no additional cost to the county. That cell phone existed, and the cost to the county was the same whether it was sitting in a home on a charger or whether it was in someone's hand.

"It was early held by this court that the power to define crimes and prescribe penalties belongs to the legislative department of government; that the power to try offenders, and to enter judgment convicting and sentencing those found guilty, belongs to the judicial department; that the power and prerogative of granting pardons, paroles or commutations belong to the executive department." *Spanton v. Clapp*, 78 Idaho 234, 237, 299 P.2d 1103, 1104 (1956). "[I]n Idaho local governments cannot override statutes enacted by the legislature." *Boudreau v. City of Wendell*, 147 Idaho 609, 612, 213 P.3d 394, 397 (2009); Idaho Const. art. XII, § 2. Likewise, the county commissioners do not have the power to grant pardons. Thus, upon learning of the issue regarding the use of a backup cell phone by Mr. Olsen's wife, the county commissioners had no power to absolve him of any criminal liability. Therefore, this prosecution did not violate the separation of powers.

### III.

### Was the Statute Unconstitutionally Vague?

Mr. Olsen contends that the statute under which he was convicted was unconstitutionally vague, both as applied to his conduct and on its face. The applicable portion of the statute

4

provides: "No public officer or public employee shall: . . . . Knowingly use any public moneys . . . to make any purchase . . . for any personal purpose or for any purpose other than for the use or benefit of the governmental entity." I.C. § 18-5701(10). He focuses upon the words "personal purpose" and argues that use of the cell phone for a personal purpose could be insignificant, be incidental to a governmental purpose, or not increase or require the expenditure of public funds.[1] He asserts that "[t]he Sheriff would have to constantly vet every purchase to ensure that there was no personal benefit for any purchase and to ensure that any benefit was exclusive to the county and did not have any ancillary benefit to any individual." He also contends, "'Personal purposes' is not defined by the statute and no direction is provided as to how to interpret or enforce the statute."

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The more important aspect of the doctrine is the requirement that the legislature provide minimal guidelines to govern law enforcement. *Id*. at 358.

The lack of definition of the term a "personal purpose" does not render the statute vague. The statute prohibits a *public* officer or *public* employee from using *public* moneys to make any purchase for a *personal* purpose or for any other purpose that is not for the use or benefit of the *governmental* entity. The contrast between *public* and *governmental* on the one hand and *personal* on the other provides sufficient definiteness not only for an ordinary person to understand what conduct is prohibited, but to provide sufficient guidelines for law enforcement. To violate the statute, the person must be making a purchase with public funds for a *personal purpose*. The person making the purchase with public funds must certainly understand the purpose for making the purchase. In addition, the person must make the proscribed purchase *knowingly*. The word "knowingly" requires "a knowledge that the facts exist which bring the act

---

[1] Apparently, the use of the backup cell phone by Mr. Olsen's wife did not result in any additional charges to the county. The county issued two cell phones to Mr. Olsen and was to pay for the charges for the cell phone plans, whether both cell phones were used or not. The cost to the county would have been the same whether the cell phone was sitting in a drawer or being used by Mr. Olsen's wife. It is difficult to imagine how, under such circumstances, paying for the cell phone plan while his wife was using the cell phone would constitute the "use of public moneys. . . to make any purchase." The statute does not prohibit the use of county *property* for a personal purpose. However, Mr. Olsen has not challenged on appeal the sufficiency of the evidence to support the verdict.

5

or omission within the provisions of this code." I.C. § 18-101(5). Thus, the statute includes a scienter requirement. "The [Supreme] Court has made clear that scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007). There is no showing that the statute is unconstitutionally vague as applied to Mr. Olsen.

Because there is no contention that the statute implicates any constitutionally protected conduct, a facial vagueness challenge will succeed only if the statute "is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). Mr. Olsen does not even argue that the statute is impermissibly vague in all of its applications. Thus, we hold that the statute is not unconstitutionally vague.


# IV.

## Did the District Court Err in Denying Mr. Olsen's Motion to Dismiss the Indictment or Merge the Three Counts into One Count?

### A. The Double Jeopardy Clause.

Prior to trial, Mr. Olsen moved to dismiss the indictment or merge the three counts into one on the ground that the prosecution for three counts violated his right against double jeopardy. The district court denied the motion. On appeal, Mr. Olsen argues:

> The trial court erred in failing to dismiss, or consolidate into a single count, Counts I, II and III in the indictment. The State impermissibly charged Sheriff Olsen with three counts of misuse of public funds pursuant to I.C. § §18-5701(10). Even though the conduct charged occurred over three years, these counts all arose out of a single continuous transaction. Each Count has exactly the same elements of proof and factual allegations, resulting in unconstitutional double jeopardy.

"The Double Jeopardy Clause, of course, affords a defendant three basic protections: [It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 497–98 (1984) (citation and internal quotations omitted). Mr. Olsen did not contend that this was a second prosecution for the same offense after acquittal or that it was a second prosecution for the same offense after conviction. Rather, he simply contended that the three charged counts arose from a single decision to allow his wife to use the backup cell phone and that her use was continuous during

6

the time periods set forth in the three charges. That is not sufficient to prevent the prosecution for three counts as charged. The United States Supreme Court has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." *Garrett v. United States*, 471 U.S. 773, 790 (1985).

On appeal, Mr. Olsen also contends that he has suffered multiple punishments for the same offense. He argues:

> Sheriff Olsen did not decide each year when he was given a new budget that it was his intent and objective to make a personal purchase with county funds by allowing his wife to continue carrying his back-up cell phone. Sheriff Olsen made one decision to have his wife carry that cell phone and did not revisit the issue each year.

Mr. Olsen bases his argument upon *Blockburger v. United States*, 284 U.S. 299 (1932). In that case, the defendant was convicted and sentenced to consecutive sentences for two sales of the same type of illegal drug to the same person on two different days. *Id*. at 301. On appeal, he contended that those two sales should constitute a single offense. *Id*. In resolving that issue against the defendant, the Supreme Court stated: "'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. * * * If the latter, there can be but one penalty.'" *Id*. at 302.

The statute under which Mr. Olsen was convicted states: "No public officer or public employee shall: . . . . Knowingly use any public moneys . . . to make any purchase . . . for any personal purpose or for any purpose other than for the use or benefit of the governmental entity." I.C. § 18-5701(10). It prohibits the knowing use of public moneys to make *any purchase* for a personal purpose. The act of making *each* purchase is prohibited, not a course of action. The statute does not criminalize the decision to make multiple purchases or define as the crime the making of multiple purchases. Therefore, the Double Jeopardy Clause would not prevent a punishment for each violation of the statute. Multiple violations of the same statute committed at different times do not constitute one offense under the Double Jeopardy Clause unless such multiple violations must be proved under the relevant statutory provisions. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

7

Not only is it clear by the wording of the statute violated that each purchase in violation of the statute is a separate offense, but it is also clear from the sentencing provision in section 18-5702. Mr. Olsen argues that he only made one decision to permit his wife to use the backup cell phone and that "[a] new decision was not made in January 2010, January 2011, and January 2012 to provide his wife with his back-up cell phone." However, section 18-5702 permits the State to aggregate in one count "any series of violations of section 18-5701, Idaho Code, comprised of separate incidents of misuse of public moneys in amounts less than three hundred dollars ($300) [that] are part of a common scheme or plan." I.C. § 18-5702(4)(a). If one decision to engage in a course of conduct over a period of time that consists of multiple purchases in violation of the statute can only constitute one offense, then why would the legislature provide that a "series of violations" of the statute pursuant to "a common scheme or plan" can be aggregated into one count? The aggregation provision would be superfluous because according to Mr. Olsen's argument it could only be one count.

**B. Aggregating Multiple Violations into Three Counts.**

As part of his motion to dismiss the indictment, Mr. Olsen also argued that the State could only charge one count rather than three counts when it aggregated individual violations of the statute to increase the penalty. The applicable portions of Idaho Code section 18-5702 state:

> (2) Any public officer or public employee charged with the receipt, safekeeping or disbursement of public moneys, who misuses public moneys in violation of section 18-5701, Idaho Code, is guilty of a felony punishable by a fine not exceeding five thousand dollars ($5,000), or by imprisonment in the state prison for not more than five (5) years, or by both, if the amount of public moneys misused is less than three hundred dollars ($300).
> (3) Except as otherwise provided in subsections (1) and (2) of this section, any public officer or public employee who misuses public moneys in violation of section 18-5701, Idaho Code, is guilty of a felony punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison for not less than one (1) year nor more than fourteen (14) years, or by both.
> (4)(a) When any series of violations of section 18-5701, Idaho Code, comprised of separate incidents of misuse of public moneys in amounts less than three hundred dollars ($300) are part of a common scheme or plan, the incidents may be aggregated in one (1) count and the sum of the value of all of the incidents shall be the value considered in determining whether the amount exceeds three hundred dollars ($300).

Because he was the elected sheriff, Mr. Olsen was a "public officer" as that term is used in the statute. I.C. § 18-5703(6).

8

He paid the service charges for the backup cell phone monthly. Therefore, each monthly payment would be a violation of the Idaho Code section 18-5701(10), assuming that the payment violated the statute. If the amount of a payment was less than $300, then that payment would constitute a felony punishable by a fine of up to $5,000 and imprisonment not exceeding five years. I.C. § 18-5702(2). If the amount of a payment was $300 or more, then that payment would constitute a felony punishable by a fine of up to $10,000 and imprisonment not exceeding fourteen years. Subsection (4) of the statute provides that when a series of separate payments in amounts less than $300 are part of a common scheme or plan, they may be aggregated "in one (1) count" in order to determine whether the amount exceeds $300.

In this case, the State aggregated the payments made during 2010 into Count One, the payments made during 2011 into Count Two, and the payments made during 2012 into Count Three, and Mr. Olsen was found guilty of all three counts. The issue is whether, if the State elects to aggregate separate payments of less than $300, can it aggregate them into multiple counts, as was done here, or only into one count. The district court ruled that "I think the statute gives the prosecutor very clearly a substantial amount of discretion that says that the incidents may be aggregated into one count, but it doesn't say they have to be aggregated into one count." In so holding, the district court erred.

"Statutory interpretation is a question of law over which this Court exercises free review. 'The rule of lenity states that criminal statutes must be strictly construed in favor of defendants.'" *State v. Anderson*, 145 Idaho 99, 103, 175 P.3d 788, 792 (2008). The statute states:

> When any series of violations of section 18-5701, Idaho Code, comprised of separate incidents of misuse of public moneys in amounts less than three hundred dollars ($300) are part of a common scheme or plan, the incidents may be aggregated in one (1) count and the sum of the value of all of the incidents shall be the value considered in determining whether the amount exceeds three hundred dollars ($300).

I.C. § 18-5702(4)(a).

The statute expressly states that "the incidents may be aggregated in one (1) count." The plain wording of the statute states that the separate incidents may be aggregated in one count. It does not state that the separate incidents may be aggregated until they total at least $300. The statute also states that when aggregation occurs, "the sum of the value of all of the incidents"

9

must be considered in determining whether the amount exceeds $300. It is *all* of the incidents that must be aggregated, not just those under $300 that the State elects to aggregate. Considering the plain wording of the statute, we hold that when the State chose to aggregate the separate incidents, it was required to aggregate all of them into one count. It could not aggregate them by year into three separate counts. Therefore, two of the convictions must be vacated.

Mr. Olsen argues on appeal that "the trial court did not find as a matter of law that the Sheriff's conduct constituted separate incidents or that those separate incidents were part of a common scheme or plan. Those are prerequisite findings that must be made before aggregation is allowed by the statute." This argument is in error. The State can elect to charge that specified violations of the statute were part of a common scheme or plan, but the jury must then decide beyond a reasonable doubt whether those violations were committed and whether any of them were part of a common scheme or plan. *State v. Lloyd*, 103 Idaho 382, 383, 647 P.2d 1254, 1255 (1982) ("The ultimate determination of whether a defendant is guilty of grand larceny because items stolen were in fact obtained in a single incident or pursuant to a common scheme or plan reflecting a single, continuing larcenous impulse or intent is, of course, for the jury to make.").

## V.
### Conclusion.

We affirm the conviction of one count of misuse of public funds and remand this case to vacate two other counts and amend the order withholding judgment accordingly.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**

10